# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

## DWAYNE CROPPER, Plaintiff-Appellant,

### v.

## MEGAN N. MCCARTHY, et al., Defendants-Appellees.

### No. 23-2091

---

## ON APPEAL FROM ORDERS OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
### (D. Del. 1:20-cv-00921-SB)

---

GRADY & HAMPTON, LLC

/s/ Stephen A. Hampton

Stephen A. Hampton (#2451)

6 North Bradford Street

Dover, Delaware 19904

(302) 678-1265

Dated: August 8, 2023

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ........................................................................ iii

**STATEMENT OF JURSIDICTION** ......................................................... 1

**STATEMENT OF ISSUES** ......................................................................... 1

**STATEMENT OF RELATED CASES AND PROCEEDINGS** ............... 2

**CONCISE STATEMENT OF THE CASE** .................................................. 2

**SUMMARY OF THE ARGUMENT** .......................................................... 9

**ARGUMENT** ................................................................................................. 9

   **I.**    **THE DOC HAS NO ADMINISTRATIVE REMEDY FOR ABUSE BY CO'S** ......................................................................... 9

   A.   Standard of Review ........................................................................ 9

   B.   The DOC Has Expressly Made Complaints of CO Abuse Non-Grievable ............................................................................. 10

   C.   Writing a Letter to a Supervisor is Not a Remedy, Especially Where the Policy Does Not Require the Supervisor to Act Within a Certain Time Frame, or Act at All. ............................................................. 13

   **II.**   **THE DISTRICT COURT ERRED IN DISBELIEVING MR. CROPPER'S UNCONTRADICTED TESTIMONY.** ................. 14

i

**A.**  Standard of Review ........................................................... 14

B.  The District Court Was Obligated to Accept Mr. Cropper's

Uncontradicted, Sworn Testimony About a CO's Misleading

Advice. ............................................................................ 14

**III.  ALL PURPOSES OF THE PLRA WILL BE SERVED IF THIS**

**ACTION IS ALLOWED TO GO TO TRIAL ............................ 17**

A.  Standard of Review ........................................................... 17

B.  Allowing Mr. Cropper to Try His Case to a Jury Of His Peers is Consistent

With the PLRA. ................................................................. 18

**IV.  THE STATUTE OF LIMITATIONS IS TOLLED WHILE AN**

**INMATE EXHAUSTS ADMINISTRATIVE REMEDIES ....... 20**

A.  Standard of Review ........................................................... 20

B.  Even if This Court Finds an Administrative Remedy Exists,

Mr. Cropper Can Send a Letter to the Area Supervisor and File

a New Action Based on the Same Facts......................... 20

**CONCLUSION ......................................................................... 21**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbatiello v. Metzger*, 2021 WL 678137 (D. Del 2021) .............................. 12

*Cameron v. Swartz*, 810 Fed. Appx. 143 (3d Cir. 2020) ............................. 17

*Downey v. Pennsylvania Department of Corrections,* 968 F.3d 299

   (3d Cir. 2020) ...................................................................................... 18

*Fatir v. Dowdy*, 2002 WL 2018824 (D. Del 2002) ..................................... 13

*Fatir v. Phelps*, 2021 WL 827142 (D. Del 2021)......................................... 12

*Freeman v. Snyder*, 2001 WL 515258 (D. Del 2001) ................................. 12

*Hardy v. Shaikh*, 959 F.3d 578 (3d Cir. 2020) ............................................ *9*

*Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022) ......................................... 17

*Miller v. Coning*, 2014 WL 808023 (D. Del. 2014)..................................... 13

*Millhouse v. Heath*, 815 Fed. Appx. 628 (3d Cir. 2020)............................. 17

*Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) ............................ *passim*

*Parkell v. Frederick*, 2019 WL 1435884 (D. Del. 2019) ............................ 12

*Pinson v. United States*, 826 Fed. Appx. 237 (3d. Cir 2020) ...................... 15

*Rahim v. Holden*, 882 F. Supp. 2d  638 (D. Del. 2012) .............................. 12

*Ross v. Blake*, 578 U.S. 632 (2016).............................................................. 16

*Shaw v. Mock*, 2020 WL 7061042 (D. Del. 2020) ....................................... 12

*Smith v. Brackett*, 2020 WL 3035578 (D. Del. 2020) .................................. 12

*Snyder v. Riverside County*, 819 Fed. Appx. 514 (9th Cir. 2020)................ 16

*Sorokaput v. Fare*, 2022 WL 3043154 (3d Cir. 2022) .................................. 20

*Woodford v. Ngo*, 548 US 81 (2006)............................................................ 18

**Statutes**

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. §§ 1331, 1343(a).............................................................................. 1

42 U.S.C. §1981 .............................................................................................. 2

42 U.S.C. §1983 ............................................................................................ *20*

42 U.S.C. § 1997e(a).................................................................................... 18

10 Del. C. § 8107 .......................................................................................... 20

**Other Authorities**

DOC POLICY 4.4 ................................................................................. *passim*

## STATEMENT OF JURISDICTION

Mr. Cropper appeals from the March 31, 2023, Oral Order and the April 11, 2023, Memorandum Opinion and Order that granted summary judgment to the defendants, D.I. 82 and D.I. 84, and the May 18, 2023 Oral Order denying the Plaintiff's Motion to Reconsider, D.I. 88. Appellant filed a Notice of Appeal in the District Court on June 14, 2023.

The District Court had subject matter jurisdiction under 28 U.S.C. §§1331, 1343(a). The District Court's judgment and orders constituted final orders that disposed of all claims. Thus, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1) Whether the Court erred in holding that the prison had a procedure that would qualify as an administrative remedy for an inmate to "grieve" abuse by a Correctional officer. Plaintiff's counsel argued that the prison did not have a procedure that would qualify as an administrative remedy at the March 29, 2023, Evidentiary Hearing.  J39-43, 46. Council also made those arguments in his letter to the court on March 31 2023. D.I. 80. The court ruled that the prison made remedies available to Mr. Cropper in the April 11th 2023 Memorandum Opinion.

D.I. 84 at 2. Council objected to that ruling in his Motion for reargument on April

25th 2023. D. I. 87 at 2-6. The court denied the motion for reargument on May 18,

2023. D. I. 88

   2)  Whether Mr. Cropper showed that no remedy was available to him. The

court held in its memorandum opinion that he had not shown the remedy was

unavailable, and in addition to the arguments made during the Evidentiary Hearing,

Council addressed the issue in his letter to the court on March 31 2023. D.I. 80.,

and objected to that ruling in his Motion for reargument on April 25th 2023. D. I.

87 at 2-6.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

   This case has not been before this Court previously, and counsel is not aware

of any other Third Circuit proceedings directly related to this case.

## CONCISE STATEMENT OF THE CASE

   This is a civil rights action in which Mr. Cropper claims the defendants

violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§1981, and his 8th Amendment right to be free from cruel and unusual punishment.

He filed a complaint in the United States District Court for the District of Delaware

titled *Dwayne Cropper v. Nathaniel C. Payton, et al.* on July 8, 2020. D. I. 1.  He

then filed an amended complaint titled *Dwayne Cropper v. Megan McCarthy, et al.* on February 9, 2021 to correctly identify the CO's involved with his injury. D. I. 21.

On July 1, 2022, the defendants filed a Motion for Summary Judgment. The matter was fully briefed by August 5, 2022, D. I. 66. On March 6, 2023, the District Court sent counsel an Oral Order stating, "The Court will be holding an evidentiary hearing over Zoom on whether an administrative remedy was available to plaintiff," and "At the hearing, counsel should also be prepared to discuss any issues presented in the summary judgment briefing." D. I. 68.

The evidentiary hearing was held on March 29, 2023, the Court issued an Oral Order on March 30, 2023 (D.I. 82), and on April 11, 2023, the Court issued its Memorandum and Order granting the defendants' motion. D.I. 84. Mr. Cropper filed a motion for reargument on April 25, 2023, and the court denied that motion on May 18, 2023, D. I. 88. Mr. Cropper filed a timely Notice of Appeal on June 14, 2023, D. I. 89, and this is his Opening Brief in support of his appeal.

On August 15, 2018, Dwayne Cropper was housed in a solitary cell at James T. Vaughn Correctional Center in Smyrna, Delaware (JTVCC). The defendants knew that Mr. Cropper at that time "was 54 years old…, stood five feet three

inches tall, weighed 153-pounds, had a history of mental health issues and seizures, [a diagnosis of] antisocial personality disorder, and …was on the list for anger management group sessions." D. I. 25, DEFENDANT'S ANSWER TO THE AMENDED COMPLAINT paragraph 2.

On the morning of the 15th, Defendant Mock found three pens taped together in Mr. Cropper's cell and confiscated them as a contraband "weapon- 3. Mr. Cropper later claimed the pens were for writing and questioned why he would need a weapon in solitary confinement.  About three hours later, defendants Wallace and Mock, along with five members of a Quick Response Team (QRT) wearing riot helmets and carrying shields, plus a K-9 dog, arrived at Mr. Cropper's cell to put him into solitary confinement. D. I. 59. PA230 (Cropper transcript at 12). D. I. 25, paragraph 4. Mock did not believe Mr. Cropper was going to cooperate even if they used pepperballs, and there was no rush to get him to solitary confinement. D. I. 59 PA 106, 109, 117, 122 (Mock transcript at 12, 22, 51, 52, 54-56), 75). PA150, 175 (Wallace transcript at 35, 50-52), PA100(Metzger transcript at 78, 79), PA116, PA179, PA150 (Parker transcript at 19). JTVCC staff know well that if left alone for a while, Mr. Cropper will calm down and become cooperative. Instead, defendant Wallace escalated the situation even though the five-foot-three, 153-pound, unarmed Mr. Cropper posed no threat to the QRT or any other inmate. When Cropper did not come to the door, Wallace partially opened it and Mock

began to fire pepperballs straight into the cell at Cropper. D. I. 59. PA141(Howard

transcript at 37), D. I. 25, paragraph 5.

The defendants concede that the DOC use of force policy requires staff to

use the least amount of force necessary to guide the situation to a peaceful

conclusion. D. I. 59. PA087, 091, 095 (Metzger transcript at 25, 44, 59, 60),

PA150, 152 (Parker transcript at19, 26), PA108 (Mock transcript at 17 18), PA134

(Howard transcript at 10), PA161 (Ryan transcript at 16), PA067 (McCarthy

transcript at 16). Mock could have taken Cropper out of the cell without using

pepperballs. D. I. 59. PA120, 125, 126 (Mock transcript at 66, 67, 88, 89). Metzger

concedes that using pepperballs was not the least amount of force necessary. D. I.

59. PA098, PA099 (Metzger transcript at 72-74).

Mr. Cropper was sent to Kent General Hospital the same day because one or

more of the pepperballs struck him in the right eye. The following day, he was

transferred to Wills Eye Hospital. D. I. 59. PA056. He came back to the JTVCC

infirmary on August 17, 2018, and was bedridden in a one-person cell with shields

for his eyes. D. I. 59. PA021-PA055. Most of the time he kept his eyes closed

because light bothered him. PA054. Often, the medical staff was unable to assess

his eyes because he wouldn't open them. PA052. On August 22, 2018, he was

noted to be extremely distraught about the possibility of losing his sight in his right

eye, intermittently crying and yelling. PA048. Today he has almost no sight in that
eye.

On one of his first days in the infirmary, he asked a female CO for a
grievance form, but she replied that they "don't do grievances in the infirmary."
J34 Evidentiary Hearing (E.H.) at 4, 5. J36 (E.H. at 10, 11.)  The back of the 584
form used to file grievances tells inmates that the form must be filed within seven
days after an incident, and more than seven days passed before Mr. Cropper had
access to a grievance form J35 (E. H. at 5, 6.) J76,  Mr. Cropper knew because of
what was written the back of the grievance form, that a grievance filed after seven
days would be returned to him as untimely. J35 (E. H. at 6, 7.) J45 (E. H. at 46.)
However, the consistent practice at JTVCC is to return "unprocessed" any inmate
grievance complaining about abuse by CO's. Deputy Warden Parker testified that
most inmates who want CO misconduct investigated file grievance forms, but that
is not the "right way." Thus, most inmates have not been instructed that the "proper
way" to have a CO investigated is to write a letter to the area supervisor.

In 2017 DOC released a new policy 4.4, ten pages that specify, among other
things, the seven-day time frame and procedure for ordinary grievances. J65-79.
Section V defines "grievance" as:

> **A written complaint concerning** the substance or application of a policy or
> practice, **any act or omission attributable to staff**, vendors, volunteers, or

other inmates **affecting an inmate** and any condition or incident within the institution that affects the grievant. J66

(Emphasis added.) The only part of policy 4.4's ten pages that deals with complaints about CO abuse, is subsection 3a, which consists of two sentences that state, "**To request the actions of security staff be investigated**, inmates submit requests in writing to the area supervisor/unit commander. J67. If response not received or the inmate is dissatisfied with the response, appeal is submitted to the Security Superintendent." JTVCC has no form for submitting a 3a "request for investigation," and policy 4.4 does not inform an inmate that the seven-day time frame does not apply to 3a.

Inmate complaints about abuse by CO's that are misfiled on grievance forms, often result in the inmates being advised that their grievance was forwarded to a supervisor, or they are given advice to whom they should write. Sample return messages include:

- "Staff issues should be corresponded to St. Lt. Demby;" D. I. 87-5 at 7.

- "This is a staff issue. A copy of this was forwarded to Capt. Dotson;" D. I. 87-5 at 8

- "In most cases to request the actions of security staff personnel to be investigated, you should write to the Unit Commander; however, a copy of this grievance will be sent by DACS to Unit Commander Captain Burton

8

and area LI at this time. If you receive no response or are dissatisfied with the response from the Unit Commander, you may appeal that decision to the Operations Superintendent and ultimately to the Warden;" D. I. 87-5 at 10, 11.

- "A copy of this grievance was forwarded to Capt. Dotson;" D. I. 87-5 at 7

The defendants presented no testimony or documentary evidence at the March 29, 2023, hearing to show that:

- Mr. Cropper's testimony at the hearing was not true;

- a grievance slip was available to Mr. Cropper in the infirmary;

- the conversation with the female CO did not occur, or not as Mr. Cropper related it;

- Mr. Cropper ever wrote to a supervisor or unit commander about a CO mistreating him;

- any supervisor or unit commander ever took any action against a CO because any inmate wrote a letter complaining of abuse by a CO;

- Mr. Cropper had ever been provided a copy of, or been instructed on, Policy 4.4 and specifically its section 3a; or JA43 (E. H. at 38, 39.)

- Inmate Shabazz, who is blind and has allegedly filed grievances from the infirmary, has ever done so without assistance or within seven days after a serious bodily injury. J44 (E. H. at 42, 43.)

## SUMMARY OF THE ARGUMENT

The District Court erred in finding that an administrative remedy existed for Mr. Cropper, in disbelieving his uncontradicted testimony that a female CO told him grievance forms were unavailable in the infirmary, and that he had not been given a copy of policy 4.4.

The District Court erred in disregarding the fact that JTVCC investigated the incident in which Mr. Cropper lost sight in one eye, without getting his input or even informing him of the results of the investigation. Even if this Court believes Mr. Cropper has an administrative remedy, there is no time limit thereon, so he can exhaust it now.

## ARGUMENT

## I.     THE DOC HAS NO ADMINISTRATIVE REMEDY FOR ABUSE BY CO'S

### A. Standard of Review

This Court reviews a grant of summary judgment and a determination that an inmate has failed to exhaust administrative remedies *de novo*. *Hardy v. Shaikh*,

959 F.3d 578, 584 (3d Cir. 2020). "Indeed, a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment… This is true even where …the information is self-serving….In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. Rather, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d Cir. 2018) (internal quotation marks and citations omitted).

### B. The DOC Has Expressly Made Complaints of CO Abuse Non-Grievable.

Nowhere in DOC Policy 4.4, Offender Grievances, are inmates told that a written complaint about physical abuse by a CO is not a "grievance." Section V of policy 4.4 defines "grievance" as:

> **A written complaint concerning** the substance or application of a policy or practice, **any act or omission attributable to staff**, vendors, volunteers, or other inmates **affecting an inmate** and any condition or incident within the institution that affects the grievant. J66.

(Emphasis added.)  Yet the defendants claim, and the District Court agreed, inmates should know that a complaint about CO abuse is not a grievance, because the DOC distinguishes "security staff" from other staff without informing inmates of that specious distinction. Policy 4.4 is ten pages long, and the only sentence that applies to a complaint against CO's is "3a" (emphasis added):

11

**To request that the actions of security staff be investigated**, write to your area supervisor/unit commander with that request. If you receive no response or are dissatisfied with the response, you may appeal that decision to the security Superintendent and ultimately to the warden. J67

Mr. Cropper did not need to request an investigation of the pepperball incident in which Sgt. Mock took away the sight in his right eye…the prison did an investigation, and it never asked for Mr. Cropper's input or informed him of the results.

When an inmate fills out a grievance form alleging CO abuse, the prison returns it as a "Returned/Unprocessed Grievance," with the box next to "Staff Investigation" checked and a quote of sentence 3a. Thus, the prison tells inmates in effect, "No matter what a CO does to you, you can't grieve it. All you can do is request an investigation, and if you get no response or an unsatisfactory one, you can appeal." J76.

Also, the paragraph at the top of the back of the 584 form used to file grievances, tells inmates:

Grievances are to be submitted within seven days from the date of the occurrence or incident, or within seven days after the inmate became aware of the incident. J76

DOC does not tell inmates in DOC policy 4.4, or any other policy, that the seven-day time limit for filing a grievance does not apply to subsection 3a. Therefore, although Mr. Cropper did not know it in 2018, there was no time limit on writing a

letter under section 3a, therefore even now, five years later, he could still write such a letter and it would be timely.

In *Freeman v. Snyder*, 2001 WL 515258, Chief Judge Sleet ruled that an inmate who lost an eye when he was assaulted by his cellmate had no administrative remedy because the defendants' submissions demonstrated his claim was not "grievable." The defendants in this action interpret their own grievance process as unavailable to any inmate who complains that CO's used excessive force on him. Over 20 years after *Freeman*, the defendants have chosen to keep excessive force claims "non-grievable," and they must live with the consequences.

The District of Delaware judges have repeatedly deemed JTVCC's grievance procedures "confusing at best," yet JTVCC has done nothing to clarify or simplify them. *Abbatiello v. Metzger*, 2021 WL 678137, at *3; *Fatir v. Phelps*, 2021 WL 827142, at *8 ("If the DOC requires inmates to administratively exhaust grievances returned as 'unprocessed' then prison policy should indicate the process to exhaust unprocessed grievances"); *Shaw v. Mock*, 2020 WL 7061042; *Parkell v. Frederick*, 2019 WL 1435884, at *2 (denying summary judgment where JTVCC neither explained how it determines "whether a grievance is nongrievable" nor how it "processes grievances deemed nongrievable"; *Rahim v. Holden*, 882 F. Supp. 2d 638, 643 (D. Del. 2012).  In *Smith v. Brackett*, 2020 WL 3035578 (D.

Del. 2020), Chief Judge Connolly declined to dismiss for failure to exhaust where DOC's policy had changed significantly, and DOC submitted no proof of which version applied to the inmate's claims.

After an attempted revolt by a few JTVCC inmates on February 1, 2017, Delaware Governor Carney assembled a task force to investigate problems in that prison. The task force issued a preliminary report in June 2017 that includes inmate concerns including "inconsistent discipline, …a grievance process that most see as meaningless, the use of shaming tactics, and the harassment of inmates by damaging or destroying their property under the guise of security searches and facility shakedowns" J235

**C. Writing a Letter to a Supervisor is Not a Remedy, Especially Where the Policy Does Not Require the Supervisor to Act Within a Certain Time Frame, or Act at All.**

In *Miller v. Coning*, Magistrate Judge (now District Judge) Fallon held that the "unofficial procedure" on which these defendants rely—requiring the inmate to write a letter to a single administrator about excessive force—did not "'qualify as a grievance procedure' because it rests on an individual administrator's decision, and 'is exactly the type of "administrative remedy" that courts frown upon." 2014 WL 808023 at *7, *quoting Fatir v. Dowdy*, 2002 WL 2018824 (D. Del 2002), at *13. "Administrative remedies are considered 'unavailable' where, as here, prison

officials deem an incident 'non-grievable.'" *Miller* at *7 (citing four other

decisions in accord). Despite those rulings, DOC still refuses to consider a CO's

assault a "grievable" offense, so the District Court in this action had "[n]o basis …

to depart from the countless prior decisions of [the District Court of Delaware],

which have consistently rejected the exhaustion defense under [similar]

circumstances." *Id*. at *8.

## II.    THE DISTRICT COURT ERRED IN DISBELIEVING MR. CROPPER'S UNCONTRADICTED TESTIMONY

### A. Standard of Review

This Court reviews a grant of summary judgment and a determination that

an inmate has failed to exhaust administrative remedies *de novo. Hardy,* 959 F.3d

at 584. "Indeed, a single, non-conclusory affidavit or witness's testimony, when

based on personal knowledge and directed at a material issue, is sufficient to defeat

summary judgment… This is true even where …the information is self-

serving….In considering a motion for summary judgment, a district court may not

make credibility determinations or engage in any weighing of the evidence. Rather,

the non-moving party's evidence is to be believed and all justifiable inferences are

to be drawn in his favor." *Paladino,*885 F.3d at 209-10 (internal quotation marks

and citations omitted).

### B. The District Court Was Obligated to Accept Mr. Cropper's Uncontradicted, Sworn Testimony About a CO's Misleading Advice.

Mr. Cropper testified in his deposition, and again in the hearing, that he requested a grievance form while he was in the infirmary, and a female CO told him they "don't do grievances in the infirmary. J34 Evidentiary Hearing (E.H.) at 4, 5. J36 (E.H. at 10, 11.) " The defendants had every opportunity to dispute that claim, but they failed to do so. Certainly, JTVCC has records of which CO's were working in the infirmary while Mr. Cropper was there, and from the evidence in this case it's obvious most CO's are male, so finding a female CO would narrow the potential search. Defendants however apparently made no effort to identify who was working in the infirmary, and therefore presented no evidence to contradict Mr. Cropper's testimony.

The District Court erred in finding Mr. Cropper not credible when there was no evidence in the record to support such a finding. The Court has to accept Cropper's uncontradicted testimony and draw all justifiable inferences from it in his favor. "At the summary judgment stage, [an inmate's] sworn testimony, standing alone, was sufficient to establish genuine issues of material fact." *Pinson v. United States*, 826 Fed. Appx. 237, 243 (3d. Cir 2020). The female CO misled Mr. Cropper, and JTVCC misled inmates to believe that the seven-day submission period applied to letters to area supervisors. The CO's misleading statement that grievances are not "done" in the infirmary is "of the sort that a reasonable inmate would be 'entitled to rely on,' even though it is 'at odds with the wording' of the

grievance process, and both her misrepresentation and the confusing Policy 4.4 are "so misleading to a reasonable inmate as to interfere with his use of the grievance process." *Hardy*, 959 F.3d at 588 (internal citations omitted). Thus, the defendants thwarted any grievance submission by Mr. Cropper, and no administrative remedy was "available" to him. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Additionally, had the officer given Mr. Cropper a grievance slip, and he filed it, the chances are good that he would have been told that his grievance was sent on to a supervisor, or at the very least, told that he needed to write to a supervisor. If the grievance had come across Deputy Warden Parker's desk, his testimony is that he would have sent it on to the proper supervisor, and he has been a deputy warden at JTVCC since October of 2013. J81, 117. It's clear that the CO's refusal to give Mr. Cropper a grievance slip is a major reason this case is before this court today.

In *Hardy*, this Court reversed a grant of summary judgment on exhaustion where a prison counselor gave the plaintiff misleading verbal advice regarding the grievance process. This Court has "long recognized that misleading as well as clearly erroneous statements can render a grievance process unavailable... it is imperative that prisons refrain from not only clear misrepresentations, but also misleading statements." *Id*. at 585, 587. *Accord, Snyder v. Riverside County*, 819 Fed. Appx. 514 (9th Cir. 2020).

This Court has held that when prison employees or officials move for

17

summary judgment on exhaustion, courts are required to accept the prisoner's "factual account." *Millhouse v. Heath*, 815 Fed. Appx. 628, 631 (3d Cir. 2020) (*citing Paladino* at 209–10). Therefore, the District Court's statement that it did not believe Mr. Cropper, D. I. 84 at 6, was improper.

At a minimum, Mr. Cropper's testimony created a genuine issue of material fact that prevented summary judgment. *Cameron v. Swartz*, 810 Fed. Appx. 143, 146 (3d Cir. 2020) (reversing District Court's summary judgment in favor of prison employees on exhaustion of administrative remedies because defendants failed "to demonstrate the absence of a genuine issue of material fact"). *Accord, Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (summary judgment on exhaustion requires "no genuine issue of material fact;" CO's hindered inmate's attempt to comply with grievance procedures "by severely damaging his vision").

## III.   ALL PURPOSES OF THE PLRA WILL BE SERVED IF THIS ACTION IS ALLOWED TO GO TO TRIAL.

### A. Standard of Review

This Court reviews a grant of summary judgment and a determination that an inmate has failed to exhaust administrative remedies *de novo. Hardy,* 959 F.3d at 584. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. Rather, the non-moving party's evidence is to be believed and all justifiable inferences are

to be drawn in his favor." *Paladino,*885 F.3d at 209-10 (internal quotation marks and citations omitted).

**B. Allowing Mr. Cropper to Try His Case to a Jury of His Peers is Consistent With the PLRA.**

The intent of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), was "to reduce the number of meritless inmate lawsuits challenging prison conditions…by returning 'control of the inmate grievance process to prison administrators,' encouraging the 'development of an administrative record, and perhaps settlements, within the inmate grievance process,' and reducing 'the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.'" *Downey v. Pennsylvania Department of Corrections,* 968 F.3d 299, 305 (3d Cir. 2020)(internal citations omitted).  Losing sight in one eye is far from frivolous or meritless, so any concern over the number and quality of inmate suits is irrelevant. Even if Mr. Cropper sent the "required" letter and followed through with the whole "process," JTVCC had already done its own investigation and refused to discipline the individual defendants. Thus, common sense dictates he would not have been "successful in the administrative process" or "persuaded by the [administrative] proceedings not to file an action in federal court." *Woodford v. Ngo*, 548 US 81, 93 (2006).

JTVCC was "given a fair opportunity to consider the grievance" before Mr. Cropper filed suit (*id*. at 95) --it completed its "investigation" over a year earlier. The prison authorities had plenty of "time and opportunity to address complaints internally before allowing the initiation of a federal case," so allowing this case to go to trial would not amount to "unwarranted federal-court interference with the administration of prisons." *Id*. at 93.

"[P]roper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Id*. at 95. Of course, if you have an administrative remedy with no time limit on submitting a letter to a supervisor about abuse of an inmate, it defeats the purpose of having a grievance process that allows witnesses to be questioned when memories are still fresh.

In fact, in this case even though a letter was not sent, the defendants all filed incident reports promptly after the incident happened, video footage of the event was available, and a use of force review happened within a few days. JA39 (E. H. at 22, 23.) J83,90, 98. A letter from Mr. Cropper would have made no difference as the review took place without a letter. Therefore, such a letter was unnecessary to give the defendants "a fair opportunity to correct their own errors." *Id*. at 94**.** If

JTVCC cared about Mr. Cropper's perspective on his injury while reviewing the

incident, all it had to do was ask him.

### IV. THE STATUTE OF LIMITATIONS IS TOLLED WHILE AN INMATE EXHAUSTS ADMINISTRATIVE REMEDIES.

#### A. Standard of Review

This Court reviews a grant of summary judgment and a determination that

an inmate has failed to exhaust administrative remedies *de novo. Hardy*, 959 F.3d

at 584.

#### B. Even if This Court Finds an Administrative Remedy Exists, Mr. Cropper Can Send a Letter to the Area Supervisor and File a New Action Based on the Same Facts.

In section 1983 cases, federal courts borrow the applicable state statute of

limitations for personal injuries, in this case 10 Del. C. § 8107. Such a statute is

tolled while an inmate exhausts his administrative remedies. *Sorokaput v. Fare*,

2022 WL 3043154, at *2 (3d Cir. 2022). Since the DOC put no time limit on

section 3a. of Policy 4.4, the time for filing suit under § 8107 has not even begun

to run. If this Court agrees that Mr. Cropper had an actual administrative remedy

available to him, and that he has not yet exhausted his administrative remedies, he

could write a letter in compliance with 3a, and then if needed  write a letter to a

supervisor, and the statute of limitations would not start to run until when he look

at thisgets an answer, or a sufficient amount of time has gone by with no answer. Of course, the more practical result would be allowing this case to proceed to trial, as the parties had completed discovery and were anticipating trial when the summary judgment was granted.

## CONCLUSION

For the reasons above, Mr. Cropper respectfully requests that this Court reverse the District Court and remand this action for trial on the merits. Alternatively, if this Court believes Mr. Cropper still has an administrative remedy that he must exhaust, he respectfully requests that this Court order that the applicable statute of limitations is tolled while he exhausts that remedy, making any new action he files within two years thereafter based on his August 15, 2018 injury, timely.

GRADY & HAMPTON, LLC

/s/ Stephen A. Hampton

Stephen A. Hampton (#2451)

6 North Bradford Street

Dover, Delaware 19904

(302) 678-1265

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT


**NO. 23-2091**

DWAYNE CROPPER

Appellant,

v.

MEGAN MCCARTHY, et. al.

Appellees,


**Certification of Bar Membership**


In accordance with 3rd Cir LAR 46.1(e), I, Stephen A. Hampton, certify that

I am a member in good standing of the Bar of this court.


/s/ Stephen A. Hampton

Stephen A. Hampton (I.D. #2451)


Dated: August 8, 2023

**Certification of Identical Compliance of Briefs**

I hereby certify that the text of Appellant's e-brief in PDF format and the paper copies are identical.

/s/Stephen A. Hampton

Stephen A. Hampton (I.D. #2451)

Dated: August 8, 2021

**Certification of Virus Scan**

I hereby certify that the e-brief was scanned for viruses by using Intego

VirusBarrier Scanner and that no viruses were found.

/s/Stephen A. Hampton

Stephen A. Hampton (I.D. #2451)

Dated: August 8, 2021

**Certificate of Word Count**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  This brief, exclusive of tables, certifications, and addenda is 5266 words in text, as counted by Microsoft Word for Mac Version 16.75 , the word processing system used to prepare this brief.

/s/Stephen A. Hampton

Stephen A. Hampton (I.D. #2451)

Dated: August 8, 2021

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

---

APPEAL NO. 23-2091

---

DWAYNE CROPPER

Appellant,

v.

MEGAN MCCARTHY, et. al.

Appellees,

---

ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF DELAWARE

CIVIL ACTION NO.: 20-00921SB

---

———————————————————

JOINT APPENDIX VOLUME I (JA01 – JA13)

FOR PLAINTIFFS - APPELLANTS

———————————————————

GRADY & HAMPTON, LLC.

/s/ Stephen A. Hampton
Stephen A. Hampton (#2451)
6 N. Bradford Street
Dover, DE 19904
(302) 678-1265

August 8, 2023

TABLE OF CONTENTS
VOLUME I (BOUND WITH BRIEF)

NOTICE OF APPEAL ................................................................. JA1

ORDER ................................................................. JA3

MEMORANDUM OF OPINION ............................................. JA4

ORAL ORDER DENYING REARGUEMNT ........................................ JA13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DWAYNE CROPPER,                          :
                                         :
               Plaintiff,                :        C. A. NO.: 1:20-cv-00921 SB
                                         :
        v.                               :        JURY TRIAL DEMANDED
                                         :
                                         :
MEGAN MCCARTHY, et. al.                  :
                                         :
               Defendants.               :

### NOTICE OF APPEAL

Notice is hereby given that Dwayne Cropper, Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the 3rd Circuit from the March 31, 2023 Oral Oder and the April 11, 2023 Memorandum Opinion and Order that :

GRANTED Summary Judgement for Defendants (D. I. 82 and D.I. 84); and the May 18, 2023 Oral Order that:

DENIED the Plaintiff's Motion to Reconsider (D. I. 88).


GRADY & HAMPTON, LLC

 /s/ Stephen A. Hampton
Stephen A. Hampton (Bar ID# 2451)
6 North Bradford Street
Dover, DE  19904
(302) 678-1265

James J. Woods, Jr. (Bar ID#2035)
745 Stratford Drive
Encinitas, CA 92024
(302) 893-7585

*Attorneys for Plaintiffs*

Dated: June 14, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DWAYNE CROPPER,

       *Plaintiff,*

       v.

                            No. 20-cv-921-SB

MEGAN N. McCARTHY, et. al,

       *Defendants.*

**FINAL JUDGMENT**

1. This Court enters judgment in favor of defendants on all claims.

Dated: April 11, 2023

_____
UNITED STATES CIRCUIT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DWAYNE CROPPER,

       *Plaintiff,*

       v.

MEGAN N. MCCARTHY, et. al,

       *Defendants.*

No. 20-cv-921-SB

---

Stephen A. Hampton, GRADY & HAMPTON, Dover, DE.

       *Counsel for Plaintiff*

Allison J. McMaster, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

       *Counsel for Defendants*

---

## MEMORANDUM OPINION

April 11, 2023

BIBAS, *Circuit Judge*, sitting by designation.

Before suing, prisoners must exhaust available administrative remedies. Because Dwayne Cropper failed to do so, I must grant summary judgment for defendants.

## I. BACKGROUND

### A. Prison guards use force to extract Cropper from his cell

Cropper is a Delaware prison inmate. In his cell, prison guards found a makeshift knife. D.I. 55-1, at A140, 142; D.I. 59, at PA168. So they decided to move him

elsewhere. D.I. 59, at PA168–69. But he refused to leave. D.I. 55-1, at A547; D.I. 59, at PA169; *see also* D.I. 50, at 2:02–2:30. To force him out, they used a pepper-ball launcher. D.I. 55-1, at A114. But rather than complying, Cropper used a blanket to shield himself and darted around his cell. D.I. 50, at 2:34–3:08. At some point, a pepper ball hit him in the eye, rupturing it. *See* D.I. 59, at PA56–57.

But still Cropper did not comply. D.I. 50, at 3:08–5:20. So prison guards entered his cell and eventually managed to restrain him. *Id.*; D.I. 55-1, at A549–50. They then took him to the infirmary. *Id.* at A114. Cropper spent an extended period in there, bedridden with his eyes shut. D.I. 59, at PA21–58.

Now Cropper sues the officials involved for excessive force and failure to train under 42 U.S.C. §1983. D.I. 21 ¶¶ 9, 17, 22–24. He also brings various state-law claims. *Id.* ¶ 19.

## B. The prison made remedies available to Cropper

The prison automatically began investigating the use of force. *See* D.I. 55-1, at A145, A435–37. That investigation found that the guards had acted appropriately and that no follow-up was necessary. *See id.* at A145, A443–44.

The prison also had various processes to let inmates lodge complaints themselves. There was a process to seek an investigation into prison staff, a medical grievance process, and a general grievance process for other issues. D.I. 55-1, at A7 ¶ 3a, A9 §VII, A14 §X. To request an investigation of prison staff, inmates must write to the Area Supervisor or Unit Commander; they cannot use the general grievance process. *Id.* at A7 ¶ 3a, A16 (listing "Staff Investigation" as reason general grievance would be returned unprocessed). If they are unhappy with the response or get none, they can

2

appeal to the Security Superintendent and then to the Warden. *Id.* Unlike the general grievance process, which has a seven-day deadline, there is no deadline to seek a staff investigation. *Compare id.*, *with id.* at A9 § VII.A.

## II. CROPPER FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act bars prisoners from suing under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Act speaks of exhausting claims "with respect to prison conditions," and the Supreme Court has interpreted this requirement to apply to "all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Id.*; *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "threshold issue that courts must address." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis and internal quotation marks omitted).

Failing to exhaust administrative remedies is an affirmative defense. *Id.* at 268. So defendants have the burden to prove that an inmate failed to exhaust. *Id.* "But once [defendants] ha[ve] established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id.* Because defendants have met their burden but Cropper has not met his, I grant them summary judgment.

One note on procedure: "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013). Although an evidentiary hearing is not required, I held one to ensure that all parties could fully present their arguments. *See Paladino v. Newsome*, 885 F.3d 203, 210–11 (3d Cir. 2018); *see also Parkell v. Lyons*, 2020 WL

3

5350250, at *3 (D. Del. Sept. 4, 2020) ("[A] district court may elect to resolve factual disputes regarding exhaustion without the participation of a jury, including on a summary judgment motion."). The parties also submitted more documents after the hearing. *See* D.I. 79; D.I. 80; D.I. 81. Having considered all evidence, I find that Cropper failed to show that the prison's administrative remedy was unavailable.

### A. Cropper failed to use his administrative remedy

Defendants show, and Cropper admits, that he never wrote to the Area Supervisor or Unit Commander to request an investigation into the pepper-ball incident. *See* D.I. 55-1, at A552. Seven months later, he did file a medical grievance, seeking follow-up care. *See id.* at A155. In that grievance, he said a pepper ball had hit him in the eye. *Id.* But he did not complain about the officers' use of force or their lack of training. *See id.*

And even if he had, that would not be enough. The Prison Litigation Reform Act requires "proper exhaustion," which "demands compliance with … critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The process for complaining about staff was separate from the process for submitting a medical grievance. *Compare* D.I. 55-1, at A7 ¶ 3a, *with id.* at A14 §X. Under the former process, writing to the Supervisor or Commander was the critical procedural rule. Because Cropper failed to comply with that rule, he did not properly exhaust the relevant administrative remedy.

### B. Cropper has not shown that the remedy was unavailable

The burden thus shifts to him to show that the administrative remedy was unavailable. *See Rinaldi*, 904 F.3d at 268. The Supreme Court has identified three situations in which an administrative remedy is unavailable: (1) when it "operates as a

simple dead-end," (2) when it is "so opaque" that it is "incapable of use," and (3) when prison officials "thwart" inmates from using it through "misrepresentation." *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016). Cropper says all three (plus one more beyond Supreme Court precedent) apply here. But none does.

1. *There is no evidence that the process was a dead end.* Cropper says he had written the Area Supervisor or Unit Commander to request investigations in the past but they never replied. *See* D.I. 55-1, at A552. The lack of a reply, however, does not mean that the process was unavailable. All that is needed is "the possibility of some relief." *Booth v. Churner*, 532 U.S. 731, 738–39 (2001). Cropper has introduced no evidence that relief was impossible.

And the Warden's testimony confirms that submitting a request could lead to relief. If writing to the Area Supervisor or Unit Commander to request an investigation did not yield a satisfactory outcome, inmates could appeal up the chain to the Warden. When the Warden received an appeal, he would reply if he "needed additional information." *See* D.I. 55-1 at A492. Otherwise, he would have his deputies "look into [the appeals] for any further information they might find." *Id.* These appeals had (at least once in the Warden's short tenure) resulted in staff discipline. *Id.*; *see also id.* at A488–489 (explaining that he started as Warden in July 2017 and has had two other jobs since then). So Cropper has failed to carry his burden of showing that this remedy was a dead end.

True, an otherwise-available administrative remedy could be a dead end because of a parallel proceeding. *See Ross*, 578 U.S. at 645–48. And Cropper's incident

triggered an automatic use-of-force investigation. D.I. 55-1, at A145. But Cropper gives no evidence that making a request would have been futile because of this parallel proceeding. *Cf. Ross*, 578 U.S. at 645–48 (summarizing evidence that inmate could not obtain relief through normal remedial process because a "parallel" investigation was already pending).

2. *The process was not opaque*. Nor was the process for submitting a request "so opaque" that it was "incapable of use." *Id.* at 643. As mentioned, Cropper admits that he has asked for staff investigations before. *See* D.I. 55-1, at A552. So the process was usable.

To show opacity, Cropper cites several cases finding that his prison's instructions for exhausting unprocessed grievances were opaque. *See, e.g.*, *Fatir v. Phelps*, 2021 WL 827142, at *7–8 (D. Del. Mar. 4, 2021); *Abbatiello v. Metzger*, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021); *see also* D.I. 80, at 2. But those cases are irrelevant here. Cropper did not get a grievance returned unprocessed; he never submitted one in the first place. Plus, as explained, the relevant administrative process was not filing a grievance but writing the Area Supervisor or Unit Commander to request an investigation. D.I. 55-1, at A7 ¶ 3a.

3. *There is no evidence that Cropper was thwarted*. Finally, there is no evidence that prison officials thwarted him from using the administrative remedy. He says he was told that he could not submit a request from the infirmary. *See* D.I. 55-1, at A552; D.I. 83, at 4:18–21. Though I do not doubt his sincerity, I do doubt his recollection. He could not recall who told him this or when. *See* D.I. 55-1, at A552–53; D.I. 83, at

6

4:25–7:9, 8:8–15, 10:6–11:14. So it seems unlikely that any officials in the infirmary stopped him from making a request "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

But even if his memory is sound, Cropper has failed to show that he was thwarted from submitting a request after leaving the infirmary. He says he thought that there was a seven-day deadline because "it says [that] on the grievance." *See* D.I. 83, at 6:21–7:14. But as explained, requests to investigate staff members do not involve a grievance. Instead, inmates must write to an Area Supervisor or Unit Commander. *See* D.I. 55-1, at A7 ¶ 3a. He had done so in the past, suggesting that he knew this was a separate process not involving a grievance. *See id.* at A552. So the general grievance form's seven-day deadline should not have confused him into thinking he had only seven days to file a written request.

Nor are the procedures for requesting a staff investigation written in such a way that "no ordinary prisoner" would know that there was no deadline for doing so. *Ross*, 578 U.S. 643–44. Those procedures are listed in a single paragraph on page three of the inmate grievance policy, under the subheading "Staff Investigation." *See* D.I. 55-1, at A7 ¶ 3a. No deadline is given. *Id.* True, later in the document, there is a seven-day deadline for general grievances. *Id.* at A9 § VII.A. But that deadline does not apply to staff investigations, which do not go through the general grievance process. It is listed under the heading "Non-Emergency Grievance Resolution Steps" and is discussed in connection with filing a "Grievance Form," which is not used for requesting a staff investigation. *Id.* And even if an inmate might assume that this seven-day

7

deadline also applied to staff investigations, "[t]he procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning." *Ross*, 578 U.S. at 644. "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* So Cropper should have made a request after he left the infirmary even if he thought that it might be too late.

4. *Cropper's injury does not excuse his failure to exhaust.* Finally, beyond the three situations identified by the Supreme Court, Cropper also suggests that he could not submit a request because his eye was injured. *See* D.I. 58, at 17. The Second and Fifth Circuits have held that an administrative remedy is unavailable when it fails to accommodate those whose physical injuries prevent them from using the remedy within the allotted time. *See Rucker v. Giffen*, 997 F.3d 88, 90 (2d Cir. 2021); *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003).

Yet even if the Third Circuit adopted a similar rule, it would not apply here. Cropper could have filed a request after his injury healed. Indeed, Cropper filed other grievances within four months of the pepper-ball incident. *See* D.I. 55-1, at A146. If he could file those grievances, he could also have requested an investigation.  Because Cropper failed to do so, I must grant defendants' motion for summary judgment on his § 1983 claims.

### III. Cropper's Failure to Exhaust Also Bars His State-Law Claims

I also grant summary judgment for defendants on Cropper's state-law claims. Delaware likewise bars prisoners from filing a complaint "relating to a condition of

8

confinement … unless the prisoner has fully exhausted all administrative remedies available through the institutional grievance procedure." 10 Del. C. §8804(g).

Delaware courts have applied this exhaustion requirement to complaints about isolated incidents. *See Laub v. Danberg*, 2009 WL 1152167, at *1, *4 (Del. Super. Ct. Mar. 4, 2009), *aff'd*, 979 A.2d 1111 (Del. 2009) (applying exhaustion requirement to retaliation claim against prison officials); *In re Petition of Reed*, 2004 WL 823431, at *1–2 & n.5 (Del. Ch. Feb. 2, 2004) (applying exhaustion requirement to claim that prison officials had taken an inmate's personal property during a shakedown). So Cropper needed to exhaust his administrative remedies before bringing his state-law claims too. Because he did not do so, those claims must be dismissed as well.

\* \* \* \* \*

"[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639. So I must grant summary judgment for defendants.

From: ded_nefreply@ded.uscourts.gov
Subject: Activity in Case 1:20-cv-00921-SB Cropper
v. McCarthy et al Oral Order
Date: May 18, 2023 at 10:09:31 AM EDT
To: ded_ecf@ded.uscourts.gov

**<span style="color:red">This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.</span>**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 5/18/2023 at 10:09 AM EDT and filed on 5/18/2023
**Case Name:**      Cropper v. McCarthy et al
**Case Number:**    1:20-cv-00921-SB
**Filer:**

**WARNING: CASE CLOSED on 04/11/2023**
**Document Number:** 88(No document attached)

**Docket Text:**
ORAL ORDER, I DENY plaintiff's motion to reconsider. See D.I. [87]. Plaintiff was informed that the Court would hold an evidentiary hearing on exhaustion. See Oral Order, March 6, 2023. Plaintiff was allowed to put on any evidence at that hearing. And notice that the Court would hold an "evidentiary hearing... on whether an administrative remedy was 'available' to plaintiff" put him on notice that the Court was going to decide the issue. Plus, much of the evidence that plaintiff now submits was already in the record and considered by the Court. Nor does the new evidence move the needle: that the prison sometimes forwarded staff-investigation requests erroneously submitted as grievances says nothing about whether the staff-investigation process was available. Plaintiff's complaint that his counsel was "not notified that the hearing was also an oral argument on the exhaustion issue" is also unwarranted. D.I. [87] at 6. The Court notified the parties that at the evidentiary hearing, "counsel should also be prepared to discuss any issues presented in the summary judgment briefing," one of which was exhaustion. Oral Order, March 6, 2023; see also D.I. [58] (discussing exhaustion). Plaintiff's legal arguments fare no better. The cases plaintiff cites to show that his prison's staff-investigation process was unavailable are distinguishable. Cf., e.g., Abbatiello v. Metzger, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021)(finding process for "Exhaust[ing] grievances returned as 'unprocessed'" unavailable); Freeman v. Snyder, 2001 WL 515258 at *7 (D. Del. 2001)(finding processes for complaining about cell assignment unavailable where testimony showed that such complaints could not be made despite official policy); Miller v. Coning, 2014 WL 808023, at *7 (D. Del.

**Feb 28, 2014)(finding staff-investigations process unavailable because there were no instructions on how to use it in the prison's written policy). Plus some rely on a case that was reversed on appeal. Compare Freeman, 2001 WL 515258, at \*7 (relying on Concepcion v. Morton, 125 F. Supp. 2d 111 (D. N.J. 2000) for proposition that the "vague, informal process described by the defendants is hardly a grievance procedure'"), and Miller, 2014 WL 808023, at \*6 (same), with Concepcion v. Morton, 306 F. 3d 1347, 1354-55 (3d Cir. 2002) (finding District Court's interpretation of administrative remedies too "narrow" and reversing). Finally, plaintiff's argument that he need not exhaust his remedies because the prison automatically investigated the use-of-force incident also fails. Under Ross v. Blake, 578 U.S. 632, 648 (2016), plaintiff must show that the staff-investigation process did not "potentially offer relief" to him because of that parallel investigation. Plaintiff's unsupported assertion that a "letter from [him] would've made no positive difference (on the contrary, JTVCC might've 'lost' or altered evidence to its benefit)" does not suffice. D.I. [87] at 8. Signed by Judge Stephanos Bibas on 5/18/2023. (apk)**

## 1:20-cv-00921-SB Notice has been electronically mailed to:

Stephen A. Hampton     sahampton@gradyhampton.com, haiken@gradyhampton.com, ldrass@gradyhampton.com, wgale@gradyhampton.com

Allison J. McMaster     Allison.McMaster@delaware.gov, Jennifer.Mitchell@delaware.gov, Karen.Truitt@delaware.gov

Rebecca Song (Terminated)
rebecca.song@delaware.gov, Karen.Truitt@delaware.gov,
jennifer.mitchell@delaware.gov

**1:20-cv-00921-SB Filer will deliver document by other
means to:**