No. 23-2091

---

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

DWAYNE CROPPER

Appellant/Plaintiff Below

v.

MEGAN N. MCCARTHY; DANA METZGER; PHILIP D. PARKER; JOHN J. RYAN, VI; ROBERT MOCK; FRANCHOT WALLACE; WILLIAM HOWARD; JESSE WOOLEYHAN; TYLER KROMKA; JAHI WHITE; MEMBERS OF THE QRT TEAM, at building 18 of James T. Vaughn Correctional Center on August 15, 2018 that interacted with Dwayne Cropper

Appellees/Defendants Below

---

On Appeal from the United States District Court
for the District of Delaware
(C.A. No. 1-20-cv-00921)
Circuit Judge Stephanos Bibas

---

## APPELLEES' ANSWERING BRIEF

Dated: September 7, 2023

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**
Rebecca Song (Bar ID 6075)
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Rebecca.song@delaware.gov
*Attorney for Appellees*

# **Table of Contents**

INTRODUCTION…………………………………………………………… 1

JURISDICTIONAL STATEMENT ...…………………………………….. 2

STATEMENT OF THE ISSUES...………………………………………...2

STATEMENT OF RELATED CASES AND PROCEEDINGS………...…………..4

    I. Relevant Facts………..………………………………………....……........... 4

        1.    The August 15, 2018 cell extraction……………………………4

        2.    DOC's Policy 4.4 makes four types of remedies available to inmates and each has its own procedure……………………….7

            i.    Request to investigate security staff………..……7

            ii.    Medical complaints………………………..…….. 8

            iii.    General non-emergency and non-medical grievance………………………….. 8

            iv.    General emergency non-medical grievance…………………….……. 9

        3.    Cropper knows that he must submit a letter pursuant to Policy 4.4 ¶ 3a to complain about security staff……………………….9

        4.    Despite Cropper's knowledge of Policy 4.4 ¶ 3a, he decided not to file a complaint  regarding the August 15, 2018 incident…..10

    II.    Procedural History…………………………………………...10

SUMMARY OF ARGUMENT…………………………………………....…12

ARGUMENT………………………………………………………...………13

# Table of Contents (continued)

I.   The March 31, 2023 Oral Order, April 11, 2023 Opinion, and Final
     Judgment properly granted summary judgment for Appellees……... 14

     1.   Policy 4.4 ¶ 3a provided an available administrative remedy for
          Cropper to exhaust the August 15, 2018 incident……………. 15

     2.   Cropper did not exhaust his administrative remedies…..…… 15

     3.   Cropper failed to prove that DOC's administrative remedies were
          unavailable to him………………………………………......16

          i.   Cropper did not prove that the administrative remedy was
               a dead end……………………………………………... 16

          ii.  Cropper failed to prove that the available remedy was
               opaque…………………………………………………18

               a.   Non-parties' grievances are irrelevant here……..19

               b.   Cropper relies on caselaw and a report that are
                    irrelevant and did not evaluate the June 23, 2017
                    version of Policy 4.4 or ¶ 3a…………………… 20

               c.   Cropper did not preserve matters for appellate
                    review…………………………………………… 21

          iii. Cropper failed to establish that the remedy was
               unavailable based on misrepresentation………………. 22

II.  The District Court properly denied Cropper's Rule 59(e)
     Motion……………………………………………………………    24

     1.   Cropper's Rule 59(e) motion was not based on new
          evidence……………………………………………………    25

     2.   Cropper's Rule 59(e) motion was not based on the need to correct
          a clear error of law or fact or to prevent manifest injustice…….26

## **Table of Contents (continued)**

3.    Cropper's testimony did not create a genuine issue of material fact……………………………………………………………… 28

III.    The Statute of Limitations does not toll Cropper's case…………… .29

CONCLUSION………………………………………………………….. .30

# **Table of Citations**

## *Cases*

*Abbatiello v. Metzger,*
   2021 WL 678137 (D. Del. Feb. 22, 2021) .................................................... 20, 26

*Baylis v. Taylor,*
   475 F. Supp. 2d 484 (D. Del. 2007) ....................................................................28

*Blystone v. Horn,*
   664 F.3d 397 (3d Cir. 2011) ............................................................. 4, 13, 25, 26

*Booth v. Churner,*
   532 U.S. 731 (2001) ......................................................................... 12, 15, 17

*Burtch v. Milberg Factors, Inc.,*
   662 F.3d 212 (3d Cir. 2011) .................................................................................2

*Concepcion v. Morton,*
   306 F.3d 1347 (3d Cir. 2002) ................................................................ 3, 15, 23

*Cruz v. SCI-SMR Dietary Servs.,*
   566 F. App'x 158 (3d Cir. 2014) ......................................................................30

*Cureton v. Nat'l Collegiate Athletic Ass'n,*
   252 F.3d 267 (3d Cir. 2001) ..............................................................................24

*Davis v. Williams,*
   495 F. Supp. 2d 453 (D. Del. 2007) ...................................................................28

*Fatir v. Dowdy,*
   2002 WL 2018824 (D. Del. Sept. 4, 2002) .........................................................27

*Fatir v. Phelps,*
   2021 WL 827142 (D. Del. Mar. 4, 2021) ..................................................... 20, 26

*Fortune v. Bitner,*
   2007 WL 9747657 (Md. Pa. July 24, 2007) .......................................................23

iv

## Table of Citations (continued)

*Fortune v. Bitner*,
    285 F. App'x 947 (3d Cir. 2008) ................................................................. 15, 23

*Freeman v. Snyder*,
    2001 WL 515258 (D. Del. Apr. 10, 2001) ............................................. 26, 27, 28

*Garza v. Citigroup Inc.*,
    881 F.3d 277 (3d Cir. 2018) ..................................................................... 4, 22

*Gibson v. Flemming*,
    837 F. App'x 860 (3d Cir. 2020) ....................................................................... 15

*Hardy v. Shaikh*,
    959 F3d 578 (3d Cir. 2020) ............................................................................... 22

*Hunt v. First Corr. Med. Servs.*,
    2009 WL 320603 (D. Del. Feb. 4, 2009) ......................................................... 27

*Lazaridis v. Wehmer*,
    591 F.3d 666 (3d Cir. 2010) ............................................................................. 26

*Miller v. Coning*,
    2014 WL 808023 (D. Del. Feb. 28, 2014) ................................................. 26, 27

*Montalban v. Powell*,
    799 F. App'x 111 (3d Cir. 2020) ..................................................................... 30

*Montanez v. Sec'y Pa. Dep't. of Corr.*,
    773 F.3d 472 (3d Cir. 2014) ............................................................................. 30

*Moore v. Lamas*,
    2023 WL 371397 (3d Cir. Jan. 24, 2023) ....................................................... 19

*Muhammad v. Mayfield*,
    933 F.3d 993 (8th Cir. 2019) ........................................................................... 17

*Napier v. Thirty or More Unidentified Fed. Agents, Employees, or Officers*,
    855 F.2d 1080 (3d Cir. 1988) ........................................................................... 29

## Table of Citations (continued)

*Orabi v. Attorney General of the United States*,
   738 F.3d 535 (3d Cir. 2014)............................................................21

*Parkell v. Frederick,*
   2019 WL 1435884 (D. Del. Mar. 31, 2019) ........................................28

*Rahim v. Holden*,
   882 F. Supp. 2d 638 (D. Del. 2012).....................................................28

*Rinaldi v. United States*,
   904 F.3d 257 (3d Cir. 2018)............................................. 13, 14, 16, 22

*Ross v. Blake*,
   578 U.S. 632 (2016)...................................................................... passim

*Shaw v. Mock*,
   2020 WL 7061042 (D. Del. Dec. 2, 2020) ........................................20

*Sisk v. United States*,
   94 F. App'x 948 (3d Cir. 2004) ..........................................................28

*Small v. Camden Cty.*,
   728 F.3d 265 (3d Cir. 2013)................................................................13

*Smith v. Brackett*,
   2020 WL 3035578 (D. Del. June 5, 2020)..........................................28

*Varner v. Shephard*,
   11 F.4th 1252 (11th Cir. 2021) ..........................................................16

### *Statutes*

10 *Del. C.* § 8804(g)....................................................... 3, 12, 14

42 U.S.C. § 1997e(a)................................................... 1, 3, 12, 14

# Table of Citations (continued)

## *Rules*

Fed. R. App. P. 4(a)(4)(A)(iv) ....................................................................................2

Fed. R. Civ. P. 59(e)....................................................................................................2

Fed. R. Evid. 201(b)...................................................................................................21

# **INTRODUCTION**

Appellant Dwayne Cropper ("Cropper") asks this Court to excuse him from the Prison Litigation Reform Act's ("PLRA") exhaustion requirement because he misunderstood the plainly written prison administrative remedy. AB at 10-18.[1] This is not a recognized exception to the PLRA. The Act bars an inmate from filing a federal lawsuit about a prison condition "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As long as the remedy is "available" to the inmate, his confusion about its procedure does not cancel out his obligation to exhaust it. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) ("a court may not excuse a failure to exhaust").

The United States District Court for the District of Delaware correctly found that: (i) the Delaware Department of Correction's Policy 4.4 ¶ 3a (effective June 23, 2017) ("¶ 3a") provided an available administrative remedy to Cropper, who sought relief from officers' alleged unreasonable use of force; (ii) Cropper did not exhaust that remedy; and (iii) Cropper failed to prove that ¶ 3a was "unavailable" to him. JA000005-12; SA2 (30:24-31:19); JA000035 (6:6-13, 7:15-21). The judgment below should be affirmed.

---

[1] "D.I." refers to the docket entries in the District Court case, *Cropper v. McCarthy*, 1:20-cv-00921-SB. "JA" refers to the Joint Appendix. "SA" refers to Appellees' Supplemental Appendix. "AB" refers to Appellant's Brief filed on August 8, 2023.

## JURISDICTIONAL STATEMENT

Appellees Sgt. William Howard, Officer Tyler Kromka, Megan McCarthy, Dana Metzger, Lt. Robert Mock, Deputy Warden Philip D. Parker, John J. Ryan, Lt. Franchot Wallace, Officer Jahi White, and Officer Jesse Wooleyhan ("Appellees") do not contest Cropper's Statement of Jurisdiction. AB at 2. The District Court also had supplemental jurisdiction under 28 U.S.C. § 1367(a) over Cropper's state claims of assault, battery, and intentional infliction of emotional distress (IIED) as they arise from the August 15, 2018 cell extraction. D.I. 21 ¶ 19.

Appellees do not contest the timeliness of the Notice of Appeal. Cropper filed the Notice within thirty days of the May 18, 2023 Oral Order. JA000032. His Motion for Reargument was filed within twenty-eight days of the April 11, 2023 Final Judgment under Fed. R. Civ. P. 59(e). *See* JA000031; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 n.7 (3d Cir. 2011) (a motion under Rule 59(e) is one filed within twenty-eight days after the entry of judgment). A timely Rule 59(e) motion tolls the time for filing a notice of appeal. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

## STATEMENT OF THE ISSUES

1.    Delaware Department of Correction ("DOC") Policy 4.4 ¶ 3a states that an inmate who wishes to request a staff investigation can submit a written request to the area Supervisor or Unit Commander. JA000067. He can appeal a response to the Security Superintendent and ultimately to the Warden. *Id.* Is ¶ 3a an "available"

administrative remedy under *Concepcion v. Morton*, 306 F.3d 1347, 1353-54 (3d Cir. 2002)?  D.I. 55 at 20; D.I. 58 at 17-18; D.I. 66 at 10; JA000005-11.

2.    Cropper failed to request a staff investigation into the August 15, 2018 cell extraction per ¶ 3a. SA2 (30:24-31:19); JA000035 (6:6-13, 7:15-21).  Did Appellees prove that Cropper failed to exhaust his administrative remedies under the PLRA, 42 U.S.C. § 1997e(a), and the Delaware exhaustion statute, 10 *Del. C.* § 8804(g)? D.I. 55 at 20; D.I. 58 at 17-18; D.I. 66 at 10; JA000005-7.

3.    Cropper successfully used ¶ 3a to complain about an officer prior to 2018. JA000038-39 (20:11-21:9).    Former James T. Vaughn Correctional Center ("JTVCC") Warden Metzger testified that this kind of inmate letter resulted in a disciplinary action against an officer.  JA000139 (19:9-20:2).  Did Cropper prove that Policy 4.4 ¶ 3a was a "dead end," "opaque," and "unavailable" remedy under *Ross*, 578 U.S. at 643-44?  JA000008-9; D.I. 58 at 17-18.

4.    Paragraph 3a imposes no filing deadline on an inmate. JA000067.  No prison administrator told Cropper that there was one.  JA000035 (6:21-7:14).  He did not submit a complaint under ¶ 3a.  SA2 (30:24-31:19); JA000035 (6:6-13; 7:15-21). Did Cropper prove that prison administrators thwarted him from exhausting his administrative remedies by "machination, misrepresentation, or intimidation" under *Ross*, 578 U.S. at 643-44?  D.I. 58 at 18; JA000009-11.

5.    The District Court found that Cropper did not prove misrepresentation under

*Ross*, 578 U.S. at 644, regardless of his memory issues. JA000009-11. Did this create a genuine issue of material fact to overturn summary judgment? D.I. 87 at 6.

6.      Cropper's Rule 59(e) motion rehashed previously raised arguments and reused exhibits from a prior filing. D.I. 80 and Exhibit 4; D.I. 87 at 3-5; D.I. 87-5. Did the District Court properly deny the motion under *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011)?

7.      Cropper asserts that Delaware's statute of limitations tolls his case so that he can refile the underlying complaint within two years from the date that he files a letter per ¶ 3a. Did he waive this argument on appeal because he did not properly raise it before the District Court? *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (arguments not raised before the District Court are waived on appeal).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no cases and proceedings related to this matter.

## STATEMENT OF THE CASE

### I.      Relevant Facts

#### 1.      The August 15, 2018 cell extraction.

On August 15, 2018, Lt. Mock conducted a shakedown of Cropper's cell and found a weapon. JA000180. Due to the contraband, Shift Commander Captain Frank Kromka ordered Cropper's move to another tier for a prehearing detention. JA000186; JA000199. Cropper refused. JA000186. Area Supervisor, Lt. Wallace,

asked him to come to the cell door and be handcuffed ("cuff up").  JA000194.
Cropper refused and poured water on the floor.  *Id.*  This prompted a Quick
Extraction Team ("QRT") extraction, composed of Ryan, Wooleyhan, White,
Howard, Kromka, and Mock with the pepperball launcher.  *Id.*; JA000186.
McCarthy was assigned to the camera.  JA000192.

These QRT officers were trained in quick extraction and the use of force and
pepperspray consistent with DOC's Use of Force Policy 8.30; they understood that
the required amount of force depended on the situation and the least amount should
be used to gain the inmate's compliance.  D.I. 55.1 at A2-3; A261-66; A268 (7:7-
10:17); A303 (45:18-22); A306 (59:19-23); A323-24 (16:19-17:22); A326 (27:15-
21); A341 (87:7-9); A372-73 (20:17-21:3); A380-81 (4:14-5:10); A383 (16:13-14);
A396 (6:20-24); A403 (13:2-11); A405 (15:16-16:6); A525-26 (15:2-17:22);
JA000188.  Mock was trained on the pepperball launcher.  D.I. 55.1 at A256-59.

When the QRT arrived at Cropper's cell, Wallace ordered Cropper to cuff up.
JA000186.  Cropper refused.  *Id.*  Wallace opened the cell door.  *Id.*  Mock aimed
the pepperball launcher at Cropper and ordered him to cuff up.  *Id.*  Cropper refused
and held a blanket in front of him.  *Id.*  Per his training, Mock fired five rounds onto
the blanket.  D.I. 55.1 at A338 (76:13-77:16).  Cropper refused to cuff up.
JA000186.  Mock deployed fifteen to twenty rounds at Cropper's shins and elbows.
*Id.*  Cropper charged at the door and yelled at Mock.  *Id.*  Mock deployed ten rounds

at Cropper's large muscle groups, extremities, fingertips, and the back of the cell to saturate the area with powder. D.I. 55.1 at A340 (82:2-10). At no point did Mock aim the pepperball launcher at Cropper's face. *Id.* (82:11-24). He ordered Cropper to get down on the ground. JA000188. Cropper refused. *Id.*

Mock directed the QRT to go into the cell. JA000186. Cropper was on the bed in a fighting stance. JA000190. He resisted as the QRT moved him from the bed to the floor. JA000182-197. Mock used pepperspray on Cropper's face, which allowed the QRT to restrain him. JA000190. The QRT took him to medical staff for an evaluation. *Id.* He was subsequently taken to the infirmary and to the hospital. D.I. 59 at PA056. On August 16, 2018, he underwent a procedure for a "laceration repair" on his right eye.[2] D.I. 55.1 at A249. On August 17, 2018, he returned to the infirmary at JTVCC. D.I. 59 at PA055. By January 3, 2019, Cropper was out of the infirmary and in a cell at Building 18. SA9.

Per Policy 8.30, Shift Commander Captain Kromka completed a Use of Force Report, which JTVCC Deputy Warden Parker reviewed. JA000198. Parker decides whether a Use of Force incident requires an Internal Affairs Review. JA000083 (4:2-20) Parker did not recommend an investigation because he did not find improper officer conduct. JA000090-93 (11:7-14:1); JA000198.

---

[2] There is no medical or expert evidence that Cropper has "almost no sight" in his right eye as a result of the August 15, 2018 incident. AB at 7.

**2. <u>DOC's Policy 4.4 makes four types of remedies available to inmates and each has its own procedure.</u>**

DOC's Policy 4.4 (effective date June 23, 2017) allows inmates to "submit written grievances concerning conditions of their confinement and BOP policies or practices under the guidelines." JA000065. Inmates can submit four types of complaints, depending on the subject matter: (i) security staff investigations; (ii) medical grievances; (iii) general non-emergency grievance that are not medically related; and (iv) general emergency grievances that are not medically related. JA000066-79. Each type of complaint has its own procedure. *Id.*

**i. <u>Request to investigate security staff.</u>**

If an inmate wants to request an investigation into a security staff member, he can "submit requests in writing to the area Supervisor" or "Unit Commander." JA000067 ¶ 3a. "If response not received or the inmate is dissatisfied with the response, appeal is submitted to the Security Superintendent and ultimately to the Warden." *Id.* Policy 4.4 does not impose a deadline on the inmate to file a request for a staff investigation. JA000065-79. The staff investigation procedure tracks differently than the general non-emergency non-medical grievance procedure because the latter involves an inmate evaluation panel and the former does not. JA000066; JA000070-71; JA000037-38 (16:25-17:16).

Metzger was the JTVCC Warden in 2017 and 2018. JA000135 (4:20-5:11). As the Warden, he received inmate complaint letters about alleged correctional

officers' mistreatment or abuse.  JA000139 (19:9-21).  In response, he reached out to inmates for information and instructed his deputy wardens to investigate the complaints.  *Id.*  He initiated a disciplinary action against an officer.  *Id.* (19:22-20:2).  Metzger also started an inmate advisory council where he spoke to inmates about issues, grievances, and morale within the inmate population.  JA000140 (23:4-19).  He organized a correctional advisory group and asked correctional officers to attend meetings with him to speak about issues they witnessed, saw, or felt within JTVCC.  JA000138 (14:2-19).

### ii.    Medical complaints.

For medical complaints, an inmate must complete Medical Grievance Form # 585 and submit it to the Inmate Grievance Chairperson ("IGC").  JA000074.  A separate Bureau of Correctional Healthcare Services' Policy A-11 provides further instructions and reply time periods for this type of complaint.  *Id.*

### iii.    General non-emergency and non-medical grievance.

A non-emergency and non-medical grievance involves a three-step process. JA000069-71.  An inmate must complete Grievance Form #584 and submit it to the IGC within seven calendar days of the incident for an attempt at informal resolution. JA000069-70.  If the grievance is unresolved, the inmate can request a hearing before a Resident Grievance Committee or a Subject Matter Expert Panel, who forwards their recommendation to the Warden or to the appropriate Bureau-Level Subject

Matter Expert (BSME).   JA000070-71.   The Warden or the BSME issues their decision.   JA000071.   If the inmate is not satisfied with the result, he can appeal it to the Bureau Chief, who conducts the final level of review.   *Id.*

Grievance Form #584 states that the inmate must write separately to his area Supervisor or Unit Commander to request an investigation of security staff. JA000076.   It further states that he can appeal the response or lack thereof to the Security Superintendent and ultimately to the Warden.   *Id.*

### iv.    <u>General emergency non-medical grievance</u>

A general emergency but non-medical related grievance is immediately forwarded to the Warden or BSME, who determines whether it is an emergency. JA000065; JA000072.   DOC promptly acts to resolve emergencies.   *Id.*   Non-emergencies are returned for processing as non-emergency non-medical grievances. *Id.*  The Bureau Chief decides on any appeals.   *Id.*

### 3.    <u>Cropper knows that he must submit a letter pursuant to Policy 4.4 ¶ 3a to complain about security staff.</u>

Prior to 2018, Cropper wrote to the area Supervisor or Unit Commander to complain about a staff member who took his shoes.  JA000038-39 (20:11-21:9).  The complaint was "definitely for the officer, and he handled it a certain way because he wanted my footwear a certain way."   JA000039 (21:7-9).   He testified that DOC "took care of that right away."   JA000038 (20:15-18).   Cropper also submitted medical grievances and non-emergency non-medical grievances.  SA4-103.

**4.  Despite Cropper's knowledge of Policy 4.4 ¶ 3a, he decided not to file a complaint regarding the August 15, 2018 incident.**

Cropper did not request a staff investigation to complain of the August 15, 2018 cell extraction, alleged use of force, or alleged failure to train.  SA2 (30:24-31:19); JA000035 (6:6-13, 7:15-21).  He stated that he had written to the area Supervisor in the past but they did not write back so he does not even write them.  SA2 (30:17-23).  He also stated that someone told him that "they don't do grievances" in the infirmary.  SA2 (30:13-16).  Cropper initially did not remember who told him that.  SA2-3 (32:16-33:13).  He later stated a woman officer told him this "a week" or "three days" after the incident.  JA000034-35 (4:5-6:1).

Cropper was able to write while he was in the infirmary after the August 15, 2018 incident.  JA000035 (7:15-21).  He chose not to.  SA2 (30:24-31:19); J000035 (6:6-13, 7:15-21).  From August 15, 2018 to July 8, 2020 when he first filed his federal complaint in this case, Cropper filed twenty complaints with DOC—all while he was out of the infirmary.  D.I. 1; SA4-103.  None of them was a complaint about an excessive use of force, assault, battery, IIED, or failure to train.  SA4-103.

## II.  **Procedural History**

Cropper is an inmate in DOC custody and housed at JTVCC in Delaware.  D.I. 21 ¶ 1.  On July 8, 2020, he filed his original Complaint.  D.I. 1.  On February 9, 2021, he filed an Amended Complaint.  D.I. 21.  He raised claims of unreasonable use of force, assault, battery, and IIED against Howard, Kromka, Wallace, Ryan,

Mock, White, and Wooleyhan.  *Id.* ¶¶ 17-19.  He brought a Failure to Train claim against Metzger and Parker.  *Id.* ¶¶ 9, 22-24.  Appellees filed their Answer and parties conducted discovery.  D.I. 12-13, 15-19, 22-23, 25-42, 44, 47-49.  Appellees moved for summary judgment on all claims and to preclude portions of plaintiff's expert testimony and reports.  D.I. 52-56.  Briefing on these two motions concluded on August 5, 2022.  D.I. 58-67.

On March 29, 2023, the District Court held an evidentiary hearing on whether an administrative remedy was available to Cropper.  JA000034-55.  The District Court instructed Appellees to produce examples of automatically triggered investigations into the use of force at DOC that did not result in any relief but where relief resulted after an inmate submitted a request in writing to the area Supervisor or Unit Commander.  D.I. 74.  On March 30, 2023, Appellees filed a responsive letter.  D.I. 79.  On March 31, 2023, Cropper filed a reply letter.  D.I. 80.

On March 31, 2023, the District Court issued an Oral Order that granted Appellees' motion for summary judgment on the basis of Cropper's failure to exhaust his administrative remedies.  JA000031.  On April 11, 2023, it issued its Memorandum and Opinion and entered Final Judgment for Appellees on all claims. JA00003-12.  On April 25, 2023, Appellant filed a Rule 59(e) Motion.  D.I. 87.  On May 18, 2023, the District Court denied the motion.  JA000014-15.  On June 20, 2023, Appellant filed a Notice of Appeal.  JA000001.

# SUMMARY OF ARGUMENT

I.    The PLRA and Delaware's exhaustion statute preclude Cropper from filing the underlying lawsuit because he did not exhaust DOC's available administrative remedy.  42 U.S.C. § 1997e(a); 10 *Del. C.* § 8804(g).

1.    DOC Policy 4.4 ¶ 3a provides an available administrative remedy to an inmate who wishes to submit a complaint about an officer's actions (*i.e.*, use of excessive force, assault, battery, IIED, or failure to train).  JA000067.  He can write to the area Supervisor or Unit Commander and request a staff investigation.  *Id.*

2.    Appellees proved that Cropper did not exhaust his administrative remedies regarding the August 15, 2018 cell extraction.  SA2 (30:24-31:19); J000035 (6:6-13, 7:15-21).  Cropper did not follow ¶ 3a to complain of the officers' actions related to the August 15, 2018 cell extraction.  *Id.*

3.    Cropper failed to prove that ¶ 3a is a "dead-end" or "opaque" remedy. Paragraph 3a provides the "possibility of relief" for the action complained of. *Booth v. Churner*, 532 U.S. 731, 738-39 (2001).  Cropper previously used ¶ 3a and received prompt relief.  JA000038-39 (20:11-21:9).  An inmate letter request for a staff investigation also resulted in a disciplinary action against an officer.  JA000139 (19:9-20:2).  Cropper also cannot prove that a correctional officer "misled" him from exhausting his administrative remedies from August 15, 2018 to July 8, 2020, when he first filed his federal complaint.

12

4.     The District Court's decision that Cropper failed to prove "misrepresentation" did not rest on his credibility.  JA000010.

II.     The District Court properly denied Cropper's Rule 59(e) motion.  Cropper repeated arguments and exhibits from his March 31, 2023 letter that a request for a staff investigation would have been returned as unprocessed.  JA000014-15; D.I. 80 and Exhibit 4; D.I. 87 at 3-5; D.I. 87-5.  *See Blystone*, 664 F.3d at 415 (Rule 59(e) motions are "not to be used as an opportunity to relitigate the case").

## ARGUMENT

Summary judgment should be affirmed on the basis of Cropper's failure to exhaust his administrative remedies regarding the August 15, 2018 incident.  This Court reviews the determination of a failure to exhaust *de novo* and accepts the District Court's "factual conclusions unless clearly erroneous."  *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013).  It will upset a finding of fact only if it has "the definite and firm conviction that a mistake has been committed."  *Id.*  The Court must "accord respect to determinations of the credibility of witnesses."  *Id.*

The District Court properly found that Appellees proved Cropper's "failure to exhaust as an affirmative defense."  *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); JA000006-8.[3]  It also correctly determined that Cropper failed to prove

---

[3] "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury."  *Small*, 728 F.3d at 271.

that Policy 4.4's ¶ 3a was "unavailable" to him.  JA000008-11.  It properly denied

Cropper's Rule 59(e) motion that relitigated the case.   JA000014-15; D.I. 80 and

Exhibit 4; D.I. 87 at 3-5; D.I. 87-5.

## I.    The March 31, 2023 Oral Order, April 11, 2023 Opinion, and Final Judgment properly granted summary judgment for Appellees.

The District Court properly granted summary judgment.   JA000006-8.

Exhaustion is a "non-jurisdictional prerequisite" to an inmate bringing a suit.

*Rinaldi*, 904 F.3d at 265.   It is a "threshold issue that *courts* must address to

determine whether litigation is being conducted in the right forum at the right time."

*Id.*   Courts make this determination by "evaluating compliance with the prison's

specific grievance procedures" and "analyzing whether the procedures were

'available' to the inmate."  *Id.*

The PLRA bars Cropper's federal claims.  "No action shall be brought with

respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

a prisoner confined in any jail . . . until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a).  Delaware's counterpart statute precludes his

state claims.  "A prisoner may not bring or file a complaint relating to a condition of

confinement, whether proceeding in forma pauperis or otherwise, unless the prisoner

has fully exhausted all administrative remedies available through the institutional

grievance procedure."  10 *Del. C.* § 8804(g).

1. **Policy 4.4 ¶ 3a provided an available administrative remedy for Cropper to exhaust the August 15, 2018 incident.**

Appellees proved that DOC's Policy 4.4 ¶ 3a was an "available" administrative remedy for Cropper to exhaust the August 15, 2018 incident because it provided the possibility of relief. JA000005-6. *See Concepcion*, 306 F.3d at 1353-54 (the removal of the qualifiers "'plain, speedy, and effective' from the PLRA's mandatory exhaustion requirement indicates that Congress no longer wanted courts to examine the effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program is 'available' in the prison involved."); *Booth*, 532 U.S. at 738 (an "available" remedy offers the "possibility of some relief" for the action complained of). If an inmate wants to request a staff investigation for actions such as use of excessive force, assault, battery, IIED, or failure to train, he must follow ¶ 3a. JA000067. He can submit a written request to the area Supervisor or Unit Commander. *Id.* If the inmate dislikes the response or did not receive one, he can appeal to the Security Superintendent and ultimately to the Warden. *Id.*

2. **Cropper did not exhaust his administrative remedies.**

Appellees proved Cropper's failure to exhaust his administrative remedy. JA000006-7. *See Gibson v. Flemming*, 837 F. App'x 860, 863 (3d Cir. 2020) (affirming summary judgment where an inmate did not submit a grievance regarding excessive force); *Fortune v. Bitner*, 285 F. App'x 947, 950-51 (3d Cir. 2008) (affirming summary judgment because the inmate did not file a grievance according

to the procedures specified in DC-ADM 804).  Cropper did not write to the area Supervisor, the Unit Commander, the Security Superintendent, or to the Warden about the August 15, 2018 cell extraction, unreasonable use of force, failure to train, assault, battery, or IIED.  SA2 (30:24-31:19); J000035 (6:6-13, 7:15-21).

### 3. **Cropper failed to prove that DOC's administrative remedies were unavailable to him.**

As Appellees showed that Cropper failed to resort to administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268.  An administrative remedy is unavailable if: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide relief" to inmates, (2) when it is "so opaque" that it becomes "incapable of use," or (3) "when prison administrators thwart inmates" from using it through "machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643-44.  Cropper did not prove unavailability under these three definitions.  JA000007-11.

### i. **Cropper did not prove that the administrative remedy was a dead end.**

Cropper failed to prove ¶ 3a was a "dead end" with officers unable or consistently unwilling to provide relief.  JA000008-9.  A remedy is not a "dead end" if it provides the possibility of relief for the action complained of.  *See Varner v. Shephard*, 11 F.4th 1252, 1258-59 (11th Cir. 2021) (grievance policy for excessive force complaints is not a dead-end remedy where the prison forwards them for

internal investigations and thus, offers the "possibility of some relief"). It is also not a dead end if the "administrative process has authority to take some action in response to a complaint, [even if] not the remedial action an inmate demands." *Booth*, 532 U.S. at 737-38; *see Muhammad v. Mayfield*, 933 F.3d 993, 1000-01 (8th Cir. 2019) (prison's administrative remedies were not a dead end where prison officials could provide vegetarian meals and fish in response to the plaintiff's request for halal meat). Paragraph 3a provided the possibility of relief. Prior to 2018, Cropper used ¶ 3a to investigate an officer's removal of his shoes. JA000038-39 (20:11-21:9).

An inmate letter about a correctional officer's alleged mistreatment submitted per ¶ 3a also led to a disciplinary action against the officer. JA0000139 (19:22-20:2). Metzger, the Warden in 2018, received inmate complaint letters about alleged correctional officers' mistreatment. *Id.* In response, he engaged in a series of actions to provide the availability of relief. JA000139 (19:9-21). He sought out information from inmates and instructed his deputy wardens to investigate the complaints. *Id.* He started an inmate advisory council where he spoke to inmates about issues, grievances, and morale. JA000140 (23:4-19). He organized a correctional advisory group and asked officers to attend meetings with him to speak about issues they witnessed, saw, or felt within JTVCC. JA000138 (14:2-19).

17

Cropper asserts that he should be excused from requesting a staff investigation per ¶ 3a because JTVCC investigated the August 15, 2018 incident and did not discipline the Appellees.[4] AB at 19-21. A parallel internal prison investigation into an officer's use of force could be a dead end only if it interfered with the prison's evaluation of the inmate's complaint on the issue. *Ross*, 578 U.S. at 644-48. There is no interference where Cropper did not file a complaint. SA2 (30:24-31:19); J000035 (6:6-13, 7:15-21). Cropper cannot prove that ¶ 3a was a dead-end remedy.

### ii.   Cropper failed to prove that the available remedy was opaque.

Cropper cannot establish that a letter request for a staff investigation was "so opaque" that it was "incapable of use." JA000009. A remedy is opaque and unavailable when it "is essentially 'unknowable' so that no ordinary prisoner can make sense of what it demands." *Ross*, 578 U.S. at 643-44. However, the "procedures need not be sufficiently 'plain' to preclude any reasonable mistake or debate with respect to their meaning." *Id.* at 644. For example, in *Moore*, an inmate who wanted to report staff abuse had to follow the DC-ADM 001 procedure and

---

[4] Cropper asserts that a letter complaint per ¶ 3a would have been unsuccessful. AB at 19. He states that remanding this case would not amount to "unwarranted federal-court interference with the administration of prison" because JTVCC had completed its investigation. *Id.* at 20. He also claims that a complaint letter was unnecessary to give Appellees "a fair opportunity to correct their errors." *Id.* He admonishes JTVCC for not inquiring his "perspective." *Id.* at 21. These statements lack merit where the PLRA does not make such exceptions to the exhaustion requirement. *See Ross*, 578 U.S. at 639 ("a court may not excuse a failure to exhaust").

report it orally or in writing to a staff member, file a grievance, or send a report to the Office of Special Investigations and Intelligence. *Moore v. Lamas*, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023). The inmate then had to follow a completely different procedure DC-ADM 804 to appeal the decision. *Id.* This "far from transparent" procedure was not opaque. *Id.*

Here, ¶ 3a's procedure is not opaque. It clearly states that to request a staff investigation, the inmate must write a letter to the area Supervisor or Unit Commander. JA000067. He can appeal a decision to the Security Superintendent and ultimately to the Warden. *Id.* Cropper used this very method that led to a staff investigation. JA000038-39 (20:11-21:9).

### a. <u>Non-parties' grievances are irrelevant here.</u>

Cropper argues that "defendants have chosen to keep excessive force claims 'non-grievable'" and relies on other inmates' grievances that were returned as unprocessed. AB at 7-9, 12-13. These are not relevant because Cropper did not receive a grievance returned unprocessed. JA000009. The relevant administrative process was to write to the area Supervisor or Unit Commander to request an investigation, not to file a grievance through the non-emergency non-medical procedure. *Id.*; JA000067.

Cropper states that "inmates have not been instructed that the 'proper way' to" complain about an officer is to write a letter to the area Supervisor. AB at 7.

19

However, he used ¶ 3a's uncomplicated approach to complain about an officer to the area Supervisor and received prompt relief. JA000038-39 (20:11-21:9). Other inmates were able to send letters to Metzger about correctional officers' alleged mistreatment. JA000139 (19:9-21).

### b. Cropper relies on caselaw and a report that are irrelevant and did not evaluate the June 23, 2017 version of Policy 4.4 or ¶ 3a.

Cropper cites to *Abbatiello v. Metzger* and *Fatir v. Phelps* to show that JTVCC's instructions for exhausting unprocessed returned grievances were opaque. AB at 13. The District Court properly noted that these cases are irrelevant because Cropper did not submit a complaint or get a grievance returned as unprocessed. JA000009. *See Abbatiello v. Metzger*, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021) (examining inmate's grievances that were returned as unprocessed); *Fatir v. Phelps*, 2021 WL 827142, at *7-8 (D. Del. Mar. 4, 2021) (evaluating failure to exhaust argument where inmate's grievances were returned as unprocessed).

Cropper further states that "JTVCC has done nothing to clarify or simplify" its grievance procedures and cites to *Shaw v. Mock* for this proposition. AB at 13. *See Shaw v. Mock*, 2020 WL 7061042, at *4 (D. Del. Dec. 2, 2020) (discussing an inmate's returned as unprocessed grievance against an officer, who allegedly called the inmate a "snitch"). The policy in that case is inapplicable because it is an outdated version of Policy 4.4 that did not contain ¶ 3a. Appellees request that this

Court take judicial notice of this document.  *See Orabi v. Attorney General of the United States*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").  That version of Policy 4.4 (effective April 27, 2015) was publicly filed in *Shaw v. Mock*, 1:17-cv-00076-MN (D. Del.) as D.I. 67-4 on June 8, 2020.

Cropper quotes from a Preliminary Report of the Independent Review into the causes of the February 1, 2007 inmate riot at JTVCC.  *See* AB at 14 (the "task force issued a preliminary report in June 2017 that includes inmate concerns including ... a grievance process that most see as meaningless.").  However, this report was released on June 2, 2017, before the relevant Policy 4.4 was effective on June 23, 2017.[5]  This Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Thus, Cropper failed to prove that the remedy was so opaque that it was unusable.

### c.  Cropper did not preserve matters for appellate review.

Cropper waives the following arguments as he did not preserve them for appellate review: (1) Policy 4.4 does not inform inmates that a "written complaint

---

[5] *See Governor Carney Releases Initial Report of Department of Correction Independent Review*, Delaware News (June 2, 2017), https://news.delaware.gov/2017/06/02/governor-carney-releases-initial-report-of-department-of-correction-independent-review/.

about physical abuse by" a correctional officer is not a "grievance;" and (2) "defendants claim, and the District Court agreed, inmates should know that a complaint about CO abuse is not a grievance, because the DOC distinguishes 'security staff' from other staff without informing inmates of that specious distinction." AB at 11. *See Garza*, 881 F.3d at 284 (to preserve a matter for appellate review, a party must "unequivocally put [his] position before the trial court at a point and in a manner that permits the court to consider its merits."); *see also* D.I. 58, 80, 87; JA000034-55.

### iii.    Cropper failed to establish that the remedy was unavailable based on misrepresentation.

Cropper failed to prove that JTVCC administrators "thwarted" him from submitting a complaint letter through "misrepresentation."[6] *Ross*, 578 U.S. at 643-44. He did not show: (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.[7] *Hardy v. Shaikh*, 959 F3d 578, 587-88 (3d Cir. 2020).

-----

[6] Cropper does not state that he was deterred from writing a letter through machination or intimidation. AB at 16-17.

[7] Cropper misplaces the burden of proof on Appellees to "identify who was working in the infirmary" to contradict his testimony. AB at 9, 16. The onus is upon Cropper to prove misrepresentation. *Rinaldi*, 904 F.3d at 268.

Even if a female officer told him that "they don't do grievances" in the infirmary, Cropper failed to prove that he was thwarted from filing a complaint letter after he left the infirmary. JA000009-11. Paragraph 3a imposes no deadline to file a request for a staff investigation. JA000067. He was out of the infirmary by January 3, 2019. SA9. He had from August 15, 2018 to July 8, 2020 to file a letter. He did not do so. SA2 (30:24-31:19); J000035 (6:6-13, 7:15-21).

Without any basis from the record, Cropper asserts that JTVCC "misled" him to believe that there was a seven-day deadline to submit a grievance. AB at 16. However, ¶ 3a does not prescribe a seven-day deadline. JA000067. There is no evidence that a prison administrator told him of a deadline. JA000035 (6:21-7:14). He did not specifically ask about it. *Id.* (7:4-14). His misunderstanding based on "other cases" is insufficient to show "unavailability." JA000010-11. *See Concepcion*, 306 F.3d at 1353-54 (upholding unclear and informal grievance procedures because it was available to inmates).

> To excuse [an inmate's]failure to properly exhaust his available administrative remedies on [his confusion in the use of the policy] would defeat the purpose of the exhaustion requirement as it would allow inmates to circumvent the exhaustion requirements based solely on their own beliefs or understanding of the prisons' administrative remedies, irrespective of the established prison policies.

*See Fortune v. Bitner*, 2007 WL 9747657, at *3 (Md. Pa. July 24, 2007), *aff'd*, *Fortune*, 285 F. App'x at 951 (finding that the inmate failed to exhaust his

administrative remedies where he used the incorrect grievance procedure to submit an excessive force complaint).

The District Court correctly concluded that Grievance Form #584 should not have confused Cropper into believing he was subject to a seven-day deadline. JA000010. References to a seven-day deadline fall under the "non-emergency grievance resolution steps" and its accompanying grievance form #584, which are separate from ¶ 3a. JA000069; JA000075-76. Cropper knew a complaint about an officer involved a different process than the general non-emergency non-medical grievance procedure. JA000038-39 (20:11-21:9).

Moreover, Cropper "should have made a request after he left the infirmary even if he thought it might be too late." JA000011. "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 578 U.S. at 644. Thus, Cropper failed to prove misrepresentation. *Id.* The judgment should be affirmed.

## II.    <u>The District Court properly denied Cropper's Rule 59(e) Motion.</u>

This Court reviews a denial of a Rule 59(e) motion for abuse of discretion. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). Questions of law are subject to plenary review. *Id.* A judgment may be altered or amended only if the party seeking reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of

new evidence that was not available *when the court granted the motion for summary judgment*; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415.  Denial of Cropper's Rule 59(e) motion was proper as it did not establish any of these three grounds.[8]  D.I. 87.

### 1.  <u>Cropper's Rule 59(e) motion was not based on new evidence.</u>

Cropper's Rule 59(e) motion submitted non-party inmates' grievances to suggest that DOC employs a "consistent practice" to return "unprocessed" an inmate grievance that complains of officer abuse.  AB at 7-9; D.I. 87-5.  This is not new evidence that can support a Rule 59(e) motion.  *See Blystone*, 664 F.3d at 415-16 (affirming the denial of a Rule 59(e) motion because the movant had the supporting evidence for months before the court denied habeas relief).  "New evidence" is that which a party could not earlier submit to the court because it was not previously available.  *Id.*  Cropper submitted these documents in his March 31, 2023 letter.  D.I. 80, Ex. 4.  These documents are also from a case that the Appellant's attorney litigated.[9]  Even if they were new evidence, the District Court correctly found that they show "nothing about whether [¶ 3a's] process was available."  JA000014.

---

[8] Cropper did not argue an intervening change in controlling law.  D.I. 87.
[9] *See Green v. Poorman*, C.A. No. 1:20-cv-00085-RGA (D. Del.) (Dkt. 4) should the Court decide to take judicial notice.  *See Orabi*, 738 F.3d at 537 n.1.

## 2. **Cropper's Rule 59(e) motion was not based on the need to correct a clear error of law or fact or to prevent manifest injustice.**

Cropper's motion was not to "correct a clear error of law or fact or to prevent manifest injustice." D.I. 87; *Blystone*, 664 F.3d at 415. It was "used as an opportunity to relitigate the case." *Id.*; *see Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (affirming denial of a Rule 59(e) motion because it advanced the same arguments from previous filings). He relies on *Freeman v. Snyder*, 2001 WL 515258 (D. Del. Apr. 10, 2001) and *Miller v.* Coning, 2014 WL 808023 (D. Del. Feb. 28, 2014) to contend that grievances for staff investigations are returned as unprocessed when they go through the non-emergency non-medical channel—the same argument from his March 31, 2023 letter. D.I. 80 at 2-3; D.I. 87 at 3-5. The District Court properly held that *Freeman* and *Miller* are inapplicable. JA000014-15.

Cropper does not explain *Freeman*'s relevancy or why it should be considered as a ground to alter summary judgment.[10] AB at 13. *Freeman* discussed a "vague, informal process" where correctional officers told an inmate to write to a prison administration about a cell change request, which the inmate did. *Freeman*, 2001

---

[10] In the May 18, 2023 Oral Order, the District Court distinguished *Abbatiello* and *Fatir* because Cropper did not submit a complaint or get a grievance returned as unprocessed. JA0000014-15. *See Abbatiello*, 2021 WL 678137, at *4 (examining inmate's grievances that were returned as unprocessed); *Fatir*, 2021 WL 827142, at *7-8 (evaluating failure to exhaust argument where inmate's grievances were returned as unprocessed).

WL 515258, at *7.  Here, the process to complain about an officer's actions is not vague or informal; it is plainly written in ¶ 3a.  JA000067.

Cropper further argues that a letter to a prison administrator about excessive force is a frowned-upon "unofficial procedure" because it rests on one person's decision.  AB at 14.  He cites to *Miller*, which examined an outdated version of Policy 4.4 that did not have ¶ 3a.[11]  *Miller*, 2014 WL 808023, at *7.  Policy 4.4 (effective June 23, 2017) is not an unofficial procedure because it has the instructions in ¶ 3a that *Miller* found wanting.  JA000067.  Additionally, ¶ 3a does not rest on one person.[12]  An inmate can initially write to either the area Supervisor or Unit Commander.  *Id.*

Cropper relies on "four other decisions in accord" following *Miller*.  AB at 15; *Miller*, 2014 WL 808023, at *7.  These cases are inapplicable because they deal with grievances that predate the June 23, 2017 Policy 4.4, do not evaluate ¶ 3a, or involve grievances that were returned as unprocessed.  *See Hunt v. First Corr. Med. Servs.*, 2009 WL 320603, at *6 (D. Del. Feb. 4, 2009) (grievance was returned as

---

[11] Appellees respectfully request this Court to take judicial notice of the outdated version of Policy 4.4 from *Miller*, which does not contain ¶ 3a.  *Orabi*, 738 F.3d at 537 n.1.  *See* Dkt. 75-4 in *Miller v. Phelps*, 1:11-cv-00377-LPS-SRF (D. Del.).

[12] *Fatir v. Dowdy*, 2002 WL 2018824 (D. Del. Sept. 4, 2002) is inapplicable to the facts here.  *Fatir* dealt with a challenge to an interstate transfer, which is not at issue in this case.  *Id.* at *13.  The District Court did not appreciate the prison's informal recommendation on how to challenge an interstate transfer, which was to write to the Interstate Compact Coordinator.  *Id.*  Paragraph 3a is a formal procedure that directs an inmate to write to an area Supervisor or Unit Commander.  JA000067.

non-grievable); *Davis v. Williams*, 495 F. Supp. 2d 453, 457 (D. Del. 2007) (same); *Baylis v. Taylor*, 475 F. Supp. 2d 484, 488-89 (D. Del. 2007) (medical grievances were withdrawn by DOC because of litigation or returned as unresolved); *Freeman*, 2001 WL 515258, at *7 (discussing a vague and informal process regarding a grievance on a cell transfer).

*Rahim v. Holden*, 882 F. Supp. 2d 638 (D. Del. 2012) and *Parkell v. Frederick,* 2019 WL 1435884 (D. Del. Mar. 31, 2019) are distinguishable. AB at 13. They deal with inmates who filed grievances, predate Policy 4.4 (effective June 23, 2017), and do not evaluate ¶ 3a. *See Rahim*, 882 F. Supp. 2d at 642 (discussing the inmate's complaints about parole denial from 1991 to 2008); *Parkell*, 2019 WL 1435884, at *2 (finding exhaustion where the inmate allegedly filed a grievance regarding a June 23, 2015 incident with an officer). Cropper fails to explain the relevance of *Smith* to his case, where the District Court denied a motion to dismiss filed by a medical provider—not DOC. *Smith v. Brackett*, 2020 WL 3035578, at *1 (D. Del. June 5, 2020); AB at 13-14.

**3.  Cropper's testimony did not create a genuine issue of material fact.**

Cropper's testimony did not create a genuine issue of material fact. AB at 15-18. *See Sisk v. United States*, 94 F. App'x 948, 949 (3d Cir. 2004) (affirming summary judgment where the defendant did not act within the scope of her employment under either party's version of events and so the District Court's

decision was not based on a credibility determination).  The District Court's decision on misrepresentation did not hinge on Cropper's credibility.  JA000009-11.  It found that regardless of Cropper's memory, he "failed to show that he was thwarted from submitting a request after leaving the infirmary." *Id.*  Paragraph 3a does not contain a seven-day deadline provision. *Id.*; JA000067.  As Cropper had written to an area Supervisor or Unit Commander in the past, "he knew this was a separate process not involving a grievance."  JA000038-39 (20:11-21:9); JA000010.  The District Court properly found that the Grievance Form #584's "seven-day deadline should not have confused him into thinking he had only seven days to file a written request." *Id.*

## III.    The Statute of Limitations does not toll Cropper's case.

Cropper asserts that if this Court affirms the judgment below, he can exhaust his administrative remedy under ¶ 3a and refile his federal claims in federal court.  AB at 21-22.  Cropper waives this argument on appeal because he did not introduce it to the District Court.  D.I. 58, 80, 87.  It is also inaccurate. Delaware's two-year statute of limitations runs from August 15, 2018 and precludes Cropper from refiling a federal case.

The statute of limitations for § 1983 cases is two years.  *See Napier v. Thirty or More Unidentified Fed. Agents, Employees, or Officers*, 855 F.2d 1080, 1087 (3d Cir. 1988) (courts look to the law of the state for the length of the statute of limitations for personal injury actions); 10 *Del. C.* § 8107 (Delaware has a two-year

statute of limitations for personal injury actions). "The date of accrual in a § 1983 action is determined by federal law." *Montanez v. Sec'y Pa. Dep't. of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014). Under federal law, a cause of action accrues when Cropper knew or should have known of the injury upon which the action is based, which is August 15, 2018. *Id.* The statute of limitations expired on August 15, 2020.

While § 1983 cases can be tolled while the inmate pursues administrative remedies, this does not occur where the inmate files a grievance after the statute of limitations expired. *See Montalban v. Powell*, 799 F. App'x 111, 112 (3d Cir. 2020) (inmate's action was time-barred where he filed a grievance after the two-year statute of limitations expired from the day of the officers' alleged excessive force). An inmate is also not entitled to tolling where he did not pursue prison administrative remedies related to his claim. *See Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 n.2 (3d Cir. 2014). Thus, tolling does not apply to Cropper's case.

<u>**CONCLUSION**</u>

The District Court's April 11, 2023 Opinion and Final Judgment and the May 18, 2023 Oral Order should be affirmed.

Dated: September 7, 2023    **STATE OF DELAWARE**
    **DEPARTMENT OF JUSTICE**

    */s/ Rebecca Song*
    Rebecca Song (Bar ID 6075)
    Deputy Attorney General
    *Attorney for Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Rebecca Song, hereby certify that I am a member of the Bar of this Honorable Court.

I further certify that the Answering Brief of Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 7,303 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that the Brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14 point.

I further certify that the electronically filed version of this Answering Brief was screened by Microsoft Defender and no viruses were found.

Dated: September 7, 2023

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Rebecca Song*
Rebecca Song (Bar ID 6075)
Deputy Attorney General
Carvel State Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Rebecca.song@delaware.gov
*Attorney for Appellees*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, being a member of the Bar of the United States Court of Appeals for the Third Circuit, hereby certifies that on September 7, 2023 she caused the Appellees' Answering Brief to be electronically filed using CM/ECF and seven copies of the Answering Brief to be delivered by Fed-Ex mail to the U.S.C.A. for the Third Circuit Clerk's Office.  An electronic copy of the Appellees' Answering Brief was served by CM/ECF upon:

Stephen A. Hampton
6 N. Bradford St.
Dover, Delaware 19904
sahampton@gradyhampton.com
Attorney for Appellant Dwayne Cropper

Dated: September 7, 2023

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

*/s/ Rebecca Song*
Rebecca Song (Bar ID 6075)
Deputy Attorney General
Carvel State Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Rebecca.song@delaware.gov
*Attorney for Appellees*