NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2091
_____

DWAYNE CROPPER,
                Appellant

v.

MEGAN N. MCCARTHY; DANA METZGER; PHILIP D. PARKER; JOHN J. RYAN,
VI; ROBERT MOCK; FRANCHOT WALLACE; WILLIAM HOWARD; JESSE
WOOLEYHAN; TYLER KROMKA; JAHI WHITE; MEMBERS OF THE QRT TEAM,
at building 18 of James T. Vaughn Correctional Center on August 15, 2018 that
interacted with Dwayne Cropper
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:20-cv-00921)
District Judge: Honorable Stephanos Bibas[1]
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
February 1, 2024
_____

Before: KRAUSE, PORTER, and CHUNG,
*Circuit Judges*.

(Filed: February 14, 2024)

---

[1] The Honorable Stephanos Bibas, Circuit Judge sitting by designation pursuant by designation pursuant to 28 U.S.C. §291(b).

_____

OPINION[*]

_____

PORTER, *Circuit Judge*.

The District Court granted summary judgment to defendants because Dwayne Cropper, a Delaware prison inmate, failed to exhaust "such administrative remedies as [were] available" to him before filing suit. 42 U.S.C. § 1997e(a). Defendants showed that Cropper did not exhaust the Delaware Department of Correction (DOC) process for requesting staff investigations. Because Cropper failed to show that this remedial process was unavailable to him, we will affirm.

I

In August 2018, prison guards shot Cropper in the eye with a pepper ball. He was taken to the infirmary for treatment where he remained for an extended period of time. The prison launched an investigation and concluded that the guards had acted appropriately.

In July 2020, Cropper sued the officials involved in the shooting, advancing several theories of liability under state law and 42 U.S.C. § 1983. DOC's Policy 4.4

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

governs the administrative processes for seeking relief that were available to Cropper before he filed suit. Policy 4.4 defines a "grievance" as:

> A written complaint concerning the substance or application of a policy or practice, any act or omission attributable to staff, vendors, volunteers, or other inmates affecting an inmate and any condition or incident within the institution that affects the grievant.

J.A. 66. Policy 4.4 distinguishes between medical and non-medical grievances. And within the pool of non-medical grievances, Policy 4.4 distinguishes between emergency and non-emergency grievances. There are different administrative processes for each category of grievance.

Separately, Policy 4.4 categorizes some incidents as "not grievable[.]" J.A. 67. To seek relief for non-grievable incidents, inmates must follow special processes. Under Policy 4.4 ¶ 3a, for example, there is a special process for requesting an investigation of prison security staff:

> To request that the actions of security staff be investigated, inmates submit requests in writing to the area Supervisor/Unit Commander. If response not received or the inmate is dissatisfied with the response, appeal is submitted to the Security Superintendent and ultimately to the Warden.

J.A. 67. This process differs from the processes for filing grievances. If an inmate attempts to use a grievance form to request a staff investigation, the form will be returned as unprocessed with a box checked that outlines the process for requesting staff investigations. And while there is a time limit of seven days for filing general grievances, there is no time limit for requesting staff investigations under ¶ 3a. On at least one occasion, an inmate's request for an investigation under ¶ 3a resulted in discipline for security staff.

Cropper did not request a staff investigation under ¶ 3a before filing suit. So the District Court held an evidentiary hearing to determine whether Cropper had exhausted available administrative remedies under 42 U.S.C. § 1997e(a). Cropper testified that, while he was in the infirmary, a guard told him that "they don't do grievances" there. J.A. 34. And he testified that he did not file a grievance after he left the infirmary because of the seven-day time limit for filing grievances.

The District Court found that Cropper had failed to show that the remedial process under ¶ 3a was unavailable to him, so it granted summary judgment to defendants in an oral order on March 31, 2023. It then issued a written Memorandum Opinion and an order granting final judgment to defendants on April 11, 2023. Finally, it denied Cropper's motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).

Cropper appealed from the District Court's orders granting summary judgment to defendants and denying his Rule 59(e) motion.

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and its determination that Cropper failed to exhaust available administrative remedies. *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020).

But we review the denial of Cropper's Rule 59(e) motion for abuse of discretion. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

## III

Under the Prison Litigation Reform Act (PLRA), inmates are required to exhaust "such administrative remedies as are available" before bringing suit "with respect to prison conditions." 42 U.S.C. § 1997e(a). We apply a burden-shifting framework to determine whether this exhaustion requirement has been satisfied. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). First, the defendants bear the burden of showing "that the inmate failed to resort to administrative remedies," *id.*, that are "officially on the books," *Ross v. Blake*, 578 U.S. 632, 643 (2016). Then the burden shifts to the inmate to show that any unexhausted "remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268.

The District Court found that the defendants satisfied their burden but that Cropper failed to satisfy his. We agree. The defendants showed that Cropper failed to write to his Area Supervisor or Unit Commander to request a staff investigation under ¶ 3a, which is a remedial process that is officially on the books. And Cropper failed to show that this process was a dead end, opaque, or otherwise unavailable to him.

## A

The defendants have satisfied their burden of showing that Cropper failed to exhaust a remedial process that was officially on the books. The threshold for satisfying this burden is low. Defendants must show only that Cropper failed to exhaust an administrative process that, on its face, is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731,

738 (2001)). The process outlined in ¶ 3a clears this threshold because it allows Cropper to obtain a "response" to the action he complains of: a pepper-ball shooting by "security staff." J.A. 67. Cropper did not exhaust ¶ 3a, so defendants have satisfied their burden.

On appeal, Cropper argues that because requests for staff investigations are not "grievable" under Policy 4.4, ¶ 3a does not count as an administrative remedy under the PLRA. To support this proposition, Cropper cites to *Miller v. Coning*, where a Magistrate Judge stated that "remedies are considered 'unavailable' where, as here, prison officials deem an incident 'non-grievable.'" No. 11-377-LPS-SRF, 2014 U.S. Dist. LEXIS 25843, at *23 (D. Del. Feb. 28, 2014). But *Miller* is distinguishable. It involved a previous version of Policy 4.4 that did not include the instructions outlined in ¶ 3a. *Id.* at *22 ("Policy 4.4 does not include the aforementioned instructions."). The remedial process in ¶ 3a is now formally included in Policy 4.4, and it was in effect at the time of the pepper-ball shooting. Thus, an administrative process for requesting staff investigations is and was "officially on the books," regardless of whether it is labelled as a "grievance procedure." *Ross*, 578 U.S. at 643.

We therefore reject Cropper's blanket proposition that "non-grievable" remedies need not be exhausted by inmates before filing suit. This proposition finds no support in the "uncompromising statutory text" of § 1997e(a), *Ross*, 578 U.S. at 640, which does not distinguish "grievances" from other remedial processes. "[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust" administrative remedies, regardless of how they are labelled. *Id.* at 639. True, the Supreme Court often discusses "grievance procedures" in the context of the PLRA's exhaustion requirement. *See, e.g., id.* at 641.

6

But under § 1997e(a), an inmate must exhaust all "administrative avenues" that offer "the possibility of some relief for the action complained of[,]" regardless of "the forms of relief sought and offered through [those] avenues." *Booth v. Churner*, 532 U.S. 731, 738, 741 n.6 (2001). Requesting a staff investigation through ¶ 3a is one such administrative avenue, so Cropper was required to exhaust that process before filing suit. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion.").

B

Because the defendants have shown that Cropper failed to resort to a remedial process, the burden shifts to Cropper to show that the process was "unavailable to him." *Rinaldi*, 904 F.3d at 268. The Supreme Court has recognized three possible reasons why a remedial process may be unavailable: it is a "dead end," it is "so opaque" that it is "incapable of use," or prison officials "thwart" its use through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643, 644. The District Court correctly found that Cropper has not shown unavailability for any of these reasons.

*First*, Cropper does not show that ¶ 3a was a "dead end." *Ross*, 578 U.S. at 643. This exception to the exhaustion requirement applies where "officers [are] unable or consistently unwilling to provide *any* relief to aggrieved inmates." *Id.* (emphasis added). The record indicates that on at least one occasion, an inmate's use of ¶ 3a resulted in disciplinary action against an officer. So this is not an example of a remedial process under which "administrative officials have apparent authority, but decline ever to

exercise it." *Ross*, 578 U.S. at 643. The "facts on the ground" suggest that there is a "potential" for relief under ¶ 3a, so Cropper was obligated to exhaust it. *Id.*

Separately, Cropper asserts that exhausting ¶ 3a would have been futile because the prison launched its own investigation into the pepper-ball shooting and concluded that the guards had acted appropriately. In *Ross*, the Supreme Court suggested that a remedial process may be a dead end where a parallel investigation has already commenced. 578 U.S. at 645–48. But there, the record indicated that grievances were dismissed "as procedurally improper when parallel . . . investigations [were] pending." *Id.* at 646. Here, there is no such evidence that the prison's parallel investigation interfered with the possibility of relief under ¶ 3a. Under *Rinaldi*, it is Cropper's burden to provide such evidence, so he has failed to show that ¶ 3a was unavailable because of a parallel investigation. 904 F.3d at 268.

*Second*, Cropper does not show that ¶ 3a was "so opaque" as to be "incapable of use." *Ross*, 578 U.S. at 643. This exception to the exhaustion requirement applies only where "no ordinary prisoner can discern or navigate" the remedial process. *Id.* at 644. Cropper has not shown that ¶ 3a satisfies this standard. It plainly requires inmates to write to their Area Supervisors or Unit Commanders to request staff investigations, and at least one prisoner has used it to obtain relief. Even if Policy 4.4 is not so clear "as to preclude any reasonable mistake or debate with respect to [its] meaning[,]" it is not so opaque as to confuse every ordinary prisoner. *Ross*, 578 U.S. at 644.

Cropper cites to a few district court decisions that describe Policy 4.4 as confusing. But they are distinguishable. In *Abbatiello v. Metzger*, for example, the

8

prisoner failed to exhaust grievances that were returned as unprocessed. No. 19-1317-CFC, 2021 U.S. Dist. LEXIS 32214, at *10 (D. Del. Feb. 22, 2021). Cropper never filed a grievance regarding the pepper-ball shooting, so the exhaustion of unprocessed grievances is irrelevant. And Cropper does not cite to any court decisions that describe the text of ¶ 3a as confusing or opaque.

*Third*, Cropper argues that ¶ 3a is unavailable because he was thwarted from using it. *Ross*, 578 U.S. at 644. He argues that the District Court erred in disbelieving his testimony relevant to this issue. Specifically, Cropper testified that he was told that he could not file grievances from the prison infirmary. And he testified that, after leaving the infirmary, he thought that it was too late to use any remedial processes because of the seven-day window for filing grievances.

In determining whether an inmate has been "thwarted" from exhausting a remedial process, we use an inquiry with both subjective and objective components. *Hardy*, 959 F.3d at 587–88. For the subjective component, Cropper must show that he himself was thwarted from using the process. *Id.* at 588. For the objective component, Cropper must show that a "reasonable inmate" would have similarly been thwarted by the alleged misrepresentation. *Id.*

Even assuming that Cropper's testimony regarding the misrepresentation in the infirmary was accurate, he fails to prove the objective component. A reasonable inmate would not have been deterred from requesting a staff investigation after leaving the infirmary, because there is no time limit for requesting a staff investigation. On appeal, Cropper states that the prison misrepresented the time limit for requesting a staff

investigation. Opening Br. 16 ("JTVCC misled inmates to believe that the seven-day submission period applied to letters to area supervisors."). But there is no evidence of misrepresentation in the record. And Cropper does not explain how a reasonable inmate would have been misled regarding the time limit. Policy 4.4 clearly specifies a time limit for filing grievances, but it does not specify a time limit for requesting staff investigations. To the extent that a reasonable inmate might "debate" that the time limit for grievances applies to staff investigations, the PLRA requires "that the inmate should err on the side of exhaustion." *Ross*, 578 U.S. at 644. A reasonable inmate would not have been thwarted from requesting an investigation after leaving the infirmary, even if there was a chance that his request would be untimely.

C

Because the District Court correctly found that the defendants satisfied their burden but Cropper did not satisfy his, we will affirm its grant of summary judgment to the defendants. Separately, Cropper appeals from the District Court's denial of his motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).

Cropper improperly used this motion "as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). He did not show "an intervening change in controlling law;" "new evidence that was not available *when the court granted the motion for summary judgment*;" or "the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)). And on appeal, he does not argue that any of these requirements are met. Because we will affirm the District Court's grant of summary

judgment and Cropper's Rule 59(e) motion was a relitigation of summary judgment, we will also affirm the District Court's denial of the Rule 59(e) motion.

D

Finally, in the alternative, Cropper asks us to declare that the statute of limitations for his § 1983 claims is currently being tolled. He argues that if he were to write a letter requesting a staff investigation now, more than five years after the pepper-ball shooting, he could still return to court after exhausting the remedial process in ¶ 3a.

We will not resolve this issue because it is not necessary to dispose of this appeal. We must determine only whether the District Court properly granted summary judgment to defendants and denied Cropper's Rule 59(e) motion, and we have done so. If Cropper exhausts ¶ 3a in the future and returns to court with claims arising from the pepper-ball shooting, the timeliness of his suit may be litigated at that time.

*****

For these reasons, we will affirm the District Court's orders granting summary judgment to the defendants and denying Cropper's Rule 59(e) motion.